R. H. CLARK *et al.*, executors, plaintiffs in error, *vs.* WILLIAM H. WHITEHEAD, defendant in error.

1. In a suit for a breach of warranty of a deed to land, where the plain tiff bought, pending an action of ejectment against his vendor for the land, the verdict and judgment of recovery against the vendor, in the ejectment suit, is evidence to sustain the alleged breach of warranty, and a non-suit was properly refused.

2. Evidence of the amount paid by plaintiff to his counsel to secure titles to the land, admitted to rebut proof that the use of the land was more than a full off-set to the interest on the purchase money, was properly admitted.

3. A purchaser of land, under bond for titles, who subsequently pays the purchase money and takes a deed, may, in a suit for breach of warranty in the deed, put in evidence the bond for titles, as a part of the history of the transaction, and to show that the defendants (the executors of the obligor) were bound to make him a good warranty title.

4. Where a plantation was bought in 1858. under bond for titles, and in great part paid for in Confederate money, in 1863, and a deed then taken ; in a suit by the purchaser against the executors of the vendor for breach of warranty, on account of the recovery in ejectment, by a third person, of a portion of the plantation, the defendants should have been permitted to prove the value of the whole place at the time of trial, in order that the jury, in ascertaining the damages, might, under the Ordinance of 1865, review the whole transaction and render their verdict on principles of equity.

5. The breach of the warranty, in this case, not having occurred before 1865, in no view can the Relief Act of 1870 be applicable to it, so as to require an affidavit of taxes to be filed by the plaintiff.

Warranty. Eviction. Non-suit. *Mesne* profits. Evidence. Ordinance of 1865. Relief Act of 1870. Before Judge CLARK. Dougherty Superior Court. June Term, 1872.

William ·H. Whitehead brought complaint against Richard H. Clark, James M. Mercer and Isaac J. F. Welch, as executors of Seth C. Stevens, deceased, for $1,625 00, besides interest, it being the purchase money paid by the plaintiff to said Stevens and to said defendants, as his executors, for lot of land number three hundred and ninety-nine, in the eleventh district of Baker county, the title to which had failed. By an amendment, the plaintiff sued for $5,000 00 damages, alleged to have been sustained by him on account of the failure of the defendants to comply with the condition of their testator's bond, by which he obligated himself to make titles to several lots and parts of lots of land, including lot number three hundred and ninety-nine. The record fails to disclose any plea.

The plaintiff introduced the following evidence:

1st. A deed, executed by the defendants on May 6th, 1864, conveying to the plaintiff lots of land three hundred and ninety-two, three hundred and ninety-three, three hundred and ninety-four, three hundred and ninety-nine, and parts of lots three hundred and ninety-eight, three hundred and ninety-seven, four hundred and five, three hundred and ninety-five, and three hundred and ninety-six, in consideration of $9,-816 88, in compliance with the terms of a bond for titles, made by their testator.

2d. The will of Seth C. Stevens, appointing the defendants his executors.

3d. A bond for titles, made by Seth C. Stevens and W. W. Cheever, on March 25th, 1857, obligating themselves, jointly and severally, to convey to plaintiff the land described in the above deed, upon the payment of three promissory notes, each for the sum of $3,302 54. The land was sold at $6 50 per acre. This instrument was objected to by defendants as immaterial to the issue. The objection was overruled and the defendants excepted.

4th. An exemplification of an action of ejectment commenced against Seth C. Stevens in the year 1854, for lot of land three hundred and ninety-nine, in the eleventh district

of Baker county, containing two hundred and fifty acres, upon which there was a recovery for the plaintiff, and an affirmance by the Supreme Court of said judgment on June 29th, 1867. The judgment of the Supreme Court was made the judgment of the Superior Court of Baker county, on November 18th, 1867.

Plaintiff closed.

The defendants moved for a non-suit, upon the ground that there was no evidence of an eviction, the plaintiff, Whitehead, not having been made a party defendant to said ejectment suit. The motion was overruled and the defendants excepted.

The defendants introduced the following evidence:

R. F. Lyon testified, that the plaintiff went into possession of lot three hundred and ninety-nine about January 1st, 1858, made large clearings, and has occupied said land ever since; that the use and enjoyment of said lot, for the years 1858, 1859 and 1860, was a fair set-off for the improvements made; that the lot was worth $4 00 or $5 00 per acre rent, during the war, in Confederate money; that the use and enjoyment of said lot was worth more than the interest on the purchase money; that witness represented the estate of Stevens in the ejectment suit, and was the only attorney that appeared in the defense; that I. E. Bower did not appear as counsel for the defendants; that the plaintiff in said suit recovered *mesne* profits, but they were remitted to prevent the defendants from obtaining a new trial; that the land was worth, May 6th, 1864, $50 00 per acre, in Confederate money. Seven-thirty Confederate treasury notes were worth a little less than ordinary Confederate money.

S. D. Irvin testified, that he was present, on May 6th, 1864, when the plaintiff paid to R. H. Clark $9,816 88, in seven-thirty Confederate treasury notes; that the value of these notes was twenty for one, in good money, at the time of the payment; that this payment was made in satisfaction of two notes given by plaintiff to Stevens, when in life, and, thereupon, the executors of Stevens made the above described deed.

James M. Mercer testified, that Stephens died in 1859, and

letters testamentary were issued a few days thereafter; that there was no litigation between the plaintiff and the executors of Stephens to compel them to comply with the bond of their testator, but that, on the contrary, on the payment of the purchase money they voluntarily executed the deed now in Court; that witness knows nothing of the employment of I. E. Bower, Esq., by plaintiff as counsel in the ejectment suit.

The plaintiff, in rebuttal, introduced testimony as follows:

The interrogatories of the plaintiff and J. T. Whitehead: Lot three hundred and ninety-nine lies southwest from the dwelling house of the plaintiff, and nearly fronting it, and is surrounded on three sides by his lands, and on the other side by the land of the witness, J. T. Whitehead. This lot is of immense value to the plaintiff, because it cuts into his plantation and is entirely cleared. The value of said lot to the plantation in 1866, was $15 00 per acre, and its present importance to said place is $10 00 per acre. Plaintiff would never have purchased said plantation, or any portion thereof, had not this lot constituted a part. He paid to Richard H. Clark, one of the defendants, $1,625 00 for said lot; one-third of said sum was paid in the year 1858, and the other two-thirds in 1863. Plaintiff paid to Isaac E. Bower, Esq., in 1866, $800 00, to secure to him from the executors of Stevens a good title to said lot. (The evidence in reference to the fee paid to Bower was admitted by the Court over the objection of the defendants, whereupon they excepted.) Paid $500 00 rent for the latter portion of the year 1867, for said lot, that being the year the land was lost in the ejectment case.

L. P. D. Warren testified, that after the recovery in the action of ejectment, he, as plaintiff's counsel, collected from the plaintiff $500 00 rent, for lot three hundred and ninety-nine, for the year 1867, and that plaintiff delivered to him, as counsel for the plaintiff in the ejectment suit, the possession of said lot, in accordance with the judgment of the Court, and stated that he did so under the advice of R. F. Lyon, the attorney of Stevens.

The jury returned a verdict for the plaintiff for $1,051 50. Whereupon the defendants moved for a new trial upon the following grounds:

1st. Because the Court erred in refusing to order a non-suit at the conclusion of the plaintiff's testimony.

2d. Because the Court erred in admitting the evidence as to the fee of $800 00, paid by plaintiff to I. E. Bower, Esq., in the year 1866.

(Note by the Judge: "Allowed to go to the jury, so that they could pass upon the question of interest.")

3d. Because the Court erred in admitting in evidence the bond for titles made by Stevens and Cheever.

4th. Because the Court erred in refusing to allow the defendants to prove by S. D. Irvin, Esq., the value of each of the lots of the plantation included in said deed at the time of the trade, and at the present time, for the purpose of enabling the jury to adjust the equities of the parties under the Ordinance of 1865.

5th. Because there was no evidence to show that the taxes had been paid.

The motion was overruled, and the defendants excepted upon each of the grounds aforesaid.

VASON & DAVIS; WILLIAM E. SMITH, for plaintiffs in error.

WRIGHT & WARREN, for defendant.

MONTGOMERY, Judge.

1. The motion for the non-suit was based upon the idea that no eviction was shown by plaintiff under the judgment in ejectment. This point was abandoned on the argument and may be dismissed with the remark that it has been settled adversely to the position of plaintiff in error since *Leary vs. Durham,* 4 *Georgia,* 593.

2. Would any merchant who had sold an article to a purchaser and warranted it to be suitable to the purpose for which

Clark *et al. vs.* Whitehead.

it was bought, have hesitated, in keeping his account, to allow a sum as a credit to the purchaser, which he had paid out for work on the article sold, required by a defect which existed at the time of sale? If the trade were rescinded, would not the purchaser's account stand credited with the price paid, the interest thereon and the sum paid to put the article in proper order, and debited with the use of the article for the time he had used it? The account, however kept, would embrace these elements.

What is the difference in principle between the case supposed and the one at bar? Why then was not the evidence of the amount paid by plaintiff to get his titles perfected admissible?

3. The plaintiff sought by this suit to bind the estate for a breach of warranty, contained in a deed made by the *executors.* It was important to his recovery in this form of action, certainly to show the power of the executors to bind the estate by a warranty deed: Code, 2522. The bond of their testator not only empowered, but bound them to make a warranty title. Hence its relevancy as evidence for the purpose indicated. Possibly the will may give this power to the executors, but that, though introduced as evidence on the trial, does not appear in the record. Further, the declaration contained a count for the breach of this very bond. We think the bond was properly admitted.

4. The deed containing the warranty, for the breach of which the suit is brought, was executed between the first of June, 1861, and the first of June, 1865. The deed, with its covenants, however, was not the whole contract. The whole contract was the sale of the land on one hand, and the purchase of it on the other. The suit was for the enforcement of the contract, that is, for the recovery of damages for the breach of it; for evidently the language of the Ordinance of 1865 does not refer alone to suits for specific performance of contracts entered into within the specified time, if such suits are embraced within its provisions at all. But in a suit upon a contract, within the provisions of the Ordinance, either party

may give in evidence the consideration or the value thereof at any time. What was the consideration of this contract? The consideration on the one hand was the money received; on the other, the land transferred. If the deed, the paper title, was the only consideration the plaintiff received for his money, then he has no standing in Court. He has not lost that either by judgment or eviction, nor is he in any danger of doing so. The value of the money, as measured by gold was proven, why not the value of the land? And certainly to enable the jury to render a verdict "upon principles of equity," it is necessary that they should be enlightened as to all parts of the transaction; *Elder vs. Ogletree, executor*, 36. *Georgia*, 70.

5. It is unnecessary to add anything to the fifth point decided.

Judgment reversed.