RAY v. PEASE et al.

95  153
96  717
95  153
s97  621
95  153
108  523
95  153
112  417
95  153
116  358
116  793
95  153
e117  76
95  153
125  502
95  153
f128  128
128  514

1. Where in a deed to land the quantity is mentioned as being a certain number of acres more or less, and in the geometric description of the land two sides of a rectangle by courses and distances are given, and also a third line which commences at a point not on either of the other two, but runs upon a designated course to the point of beginning, and these three lines, when properly platted, show three sides of a rectangle, a proper construction of such description, between the grantor and grantee and their privies in estate, would supply the fourth side, even though the effect would be to pass to the grantee a greater number of acres than that expressly named in the verbal description; and particularly would this be true where the grantee, soon after the execution of the deed, entered into possession and, with the acquiescence of the grantor, inclosed by a fence the entire tract represented by such rectangle, and remained for a number of years in actual possession.·

2. Where the grantee under such deed conveys a moiety of the premises covered by the same to a third person, taking his notes for a portion of the purchase money, it is no defense to a suit instituted thereon that there is an outstanding title remaining in the plaintiff's grantor, or his heirs, in consequence of alleged ambiguity or uncertainty in the description contained in the deed under which the plaintiff held. This is so even though the non-residence and insolvency of the plaintiff be alleged and proved. The alleged ambiguity or uncertainty upon a proper interpretation of the deed does not really exist. An injunction to restrain the prosecution of the suits upon the notes until the deed is reformed, was therefore properly denied.

December 4, 1894.

Petition for injunction. Before Judge LUMPKIN. Fulton county. June 19, 1894.

On March 14, 1894, Ray presented his petition alleging: On April 25, 1890, he bought of Mrs. Pease of Chicago, Ill., and her husband P. P. Pease, and L. B. Davis, as her trustees, for $15,000, a tract of land in the 17th district of Fulton county, Ga., part of land lot 106, "beginning at the junction of the north line of said lot number 106 with the east side of West Peachtree street, which point is half the width of said street from the northwest corner of said lot of land, runs south along

the northeast side of West Peachtree street 711 feet to
a street not yet named, which divides block number 5,
according to map of the property of P. P. Pease sold to
William D. Grant from this tract, thence east along the
north side of said last named street 571 feet to the land
now owned by J. N. Smith, thence north along the west
line of the land now owned by Smith and the land now
owned by Pat. Calhoun 711 feet to the north line of said
lot of land number 106, thence west along said north line
of said lot of land 571 feet to the beginning corner; said
tract being the land conveyed by Thomas F. Grubb to
P. P. Pease and L. B. Davis as trustees for Mrs. Emma C.
Pease, by deed executed May 1, 1862, and recorded in
book G, page 68, clerk's office superior court, Fulton
county, Ga." This was the description in the bond for
title, copy of which is attached. Of this amount Ray
paid $3,000 cash, and gave his four promissory notes of
$3,000 each, due annually April 25, of the four years
thereafter, respectively. Each of these notes was pay-
able to Emma C. Pease, P. P. Pease and L. B. Davis,
trustees for Emma C. Pease, or bearer, "being part of
the purchase money for ten acres of land on West Peach-
tree street." On April 25, 1891, Ray, believing from the
representations made by Mrs. Emma C. Pease and her
agent that a good title to said land could be made to
him by said vendors, paid the first note and interest
upon all the others. Mrs. Pease, by her said trustees,
on May 1, 1862, bought said land of T. F. Grubb now
deceased. Since the purchase of said land by Ray and
the payment of said money, he has learned, by inspec-
tion of the original deed made by Grubb, that Mrs.
Pease has not a good title to the land, and hence cannot
comply with her contract in the bond for titles. The
premises of the deed made by Grubb read: "And doth
by these presents grant, bargain, sell unto the said P. P.
Pease, L. B. Davis, trustees for Mrs. Emma C. Pease,

their heirs and assigns," thus conveying the land to Pease and Davis, their heirs and assigns, and not to them as trustees of Mrs. Pease, her heirs and assigns. Mrs. Pease claims that this is a mistake in the deed, and that the title to the land should be in said parties as her trustees, her heirs and assigns. If this be true, it is her duty to have the deed reformed. The description in the deed of the land conveyed: part of land lot 106 in the 17th district of Fulton county, "bounded as follows: commencing at the northwest corner of said lot, running south on Boring lot 1,500 feet, east 608½ feet to a stake corner, west 608½ feet to commencing corner, containing ten acres more or less," does not convey title to one fourth of land by said parties sold to Ray and to which Mrs. Pease has bound herself to make him a good title; but conveys nothing, simply making a line, and for that reason is void for uncertainty of description; but if by a liberal construction of the deed, "west" can be construed to mean "northwest," it would convey a triangular piece of land to Ray's vendors instead of a parallelogram. Mrs. Pease claims that this description is a mistake and should read: "commencing at the northwest corner of said lot, running south on Boring lot 1,500 feet, thence east 608½ feet to a stake corner, thence north 1,500 feet to the north line of said lot of land number 106, thence west 608½ feet to the commencing corner, containing ten acres more or less." If such was the intention of the parties, the deed should be reformed so as to make it speak the truth. If on the other hand it was the intention of the parties to convey a triangular tract, the deed should be reformed so as to substitute "northwest" for "west," and should give distances sufficient to extend said line to the commencing point, which the deed does not now do. If the deed is reformed upon the last theory, Ray cannot get all the land he bought from Mrs. Pease, because a

part of the land described in the bond lies beyond the triangle; and in that event he ought not to be compelled to pay said entire purchase price. If the deed should be reformed as last mentioned, he would not get much more than a third of the land which he bought and for which he holds the bond, which would not be worth as much as the money he has already paid to Mrs. Pease. The land has been vacant nearly the entire time since the purchase from Grubb to the time it was sold to Ray, and for that reason Mrs. Pease does not claim title by prescription. Notwithstanding these defects, she claims that she has an equitable title to the land; but it is not just that Ray should run the risk of deciding whether she has any title, and it is not just and he did not contract to be at the expense of establishing her title, nor is it just that he be made to pay the balance until the defects in her title shall be determined and corrected. She does not claim that the heirs at law of Grubb will admit that there is a mistake in the deed, or will allow it to be corrected, or will leave Ray undisturbed in his possession. She is of full age and of sound mind, and has no need under the law of a trustee. Pease is her agent, and also resides in Chicago. In the spring of 1892 Ray called the attention of Pease as such agent to the verbiage of the Grubb deed, and upon his alleging and admitting that there was a mistake therein, urged him and has since urged Mrs. Pease to proceed to reform the same, all of which she has failed and refused to do; notwithstanding which she insists upon his paying the balance of the purchase money, and has by her attorneys, King & Anderson, begun suit in the city court of Atlanta upon the notes due in 1892 and 1893, and has placed the note due in 1894 in their hands for suit and collection. Ray is willing and hereby offers to pay said notes, whenever she can and will make him a good title to said land as she has bound herself to do. She

and her husband are non-residents, and for this reason cannot be made to respond to Ray in damages, in case after paying the notes he should lose the land or part of it because of the defect in her title. He is informed and believes that she is insolvent. When he purchased the land, she and her husband owned other valuable realty in Atlanta, but they since have been selling their land until they have left but little if any, and if they still own any, are trying to dispose of it. Should the heirs of Grubb elect never to disturb him in his possession, the defects in the deed cast a cloud upon any title she might make him, and thus make it impossible for him to sell the land at its full value, or use it as security in obtaining a loan. He has endeavored to obtain a loan upon it, but has failed because competent lawyers refused to certify that the title is good. He prays that Mr. and Mrs. Pease, Davis, and the heirs at law of Grubb, naming them, be ordered to litigate among themselves and determine to whom the land described in the bond belongs, and to whom Ray should pay the balance of the purchase money; and what, if any, mistake there is in the Grubb deed; that whatever mistake may be found in that deed, it be corrected and the deed be reformed; and if, upon such reformation, it appear that only a triangular tract of land was conveyed, an accounting be had between him and Mrs. Pease, and if it be determined therein that he has already paid more money than that part of the land was worth when he bought, that she be decreed to pay back to him such overplus with interest, and the note sued upon and that falling due in 1894 be surrendered and cancelled, and that she make him a good title to such part of the land as she herself has a legal title to; but if it be determined that she has a legal title to all the property described in the bond, then that he be decreed to pay his notes upon her making to him good title to the land

described in said bond. He further prays for injunction against Mrs. Pease and said attorneys, restraining them from further prosecuting the suit and from bringing suit to collect the note falling due in 1894. Process was prayed against Mr. and Mrs. Pease, Davis, said attorneys, and the heirs of Grubb. By amendment he alleged: When he bought the land, Mrs. Pease by her agents pointed out the lines of the land as described in the bond, and represented to him that she had a good title thereto. He would not have so bought had he not been led to believe by such representations that she had a title to all of said land. In making these representations she committed a fraud on him and sold him land to which she had no title, that is that part lying outside of the triangle, the legal title to which part is in the estate of Grubb, as appears of record, and is more than three fourths of the land sold to Ray by Mrs. Pease. The land lying inside of the triangle which was sold to him is not worth as much as he has already paid her. Since his purchase he has expended $731.54 in improvements on the land, stating them, greatly contributing to increase its value; and the land thought to be bought by him has since the purchase, because of said improvements, greatly enhanced in value and is now worth about $40,000. Since the purchase he has paid about $376 in taxes upon the land, but the land being unimproved he has received nothing in the way of rents. If he should pay her the balance of the purchase money and take her deed, he would have to surrender the bond, and if he should afterwards lose the land because of her having no title, he could not recover on the bond as damages the increased value of the land and the improvements placed thereon. She being a non-resident, he could not recover of her the purchase money paid and interest, by suit in this State for breach of warranty of title. If there is shown to be a mistake in the deed

claimed by her and the same is corrected, he is willing and offers to pay the balance of the purchase money; otherwise he prays that the trade be rescinded and that she be decreed to take back the land, or so much of it as she may have no title to, and pay him all damages he may have sustained because of her failure to comply with her bond, or pay him the purchase money already paid with interest, and the amounts he has paid out for taxes and improvements; and to this end he offers to surrender the possession of the land to her upon her paying to him said damages.

Defendants, except the heirs of Grubb, demurred upon the grounds: The petition is without equity, and plaintiff is not entitled to the relief prayed; the petition is multifarious; it makes a misjoinder of parties; and plaintiff has as against these plaintiffs a full and adequate remedy at law. Said defendants also answered, the nature of which answer will sufficiently appear from the report of the testimony, except that the answer alleged that on December 13, 1892, Ray filed a bill with substantially the same allegations as those contained in the present petition, and praying for substantially the same relief, and seeking to enjoin the suits in the city court; that upon the hearing upon this bill on February 5, 1893, the injunction prayed for was denied; that Ray did not except to this ruling and took no action with regard thereto until March 14, 1894, when he dismissed said bill and filed the present petition; that one of the suits in the city court had been assigned for trial for March 15, 1894, and this petition was filed on the eve of that trial; and that the determining of the question as to whether an injunction should be granted upon the matter in question having already been adjudicated by a court of competent jurisdiction, Ray cannot be again heard in a prayer for the same relief.

Upon the hearing Ray introduced the bond for titles,

the purchase money note which he paid April 25, 1891, and the original Grubb deed. It appears that the *habendum* clause of this deed is: "To have and to hold said tract or parcel of land unto them, the said P. P. Pease and L. B. Davis, trustees for Mrs. Emma C. Pease, her heirs and assigns"; and the clause of warranty is in similar language. Ray also introduced the suits in the city court, and further testimony to the following effect: In April, 1890, when Ray call the attention of West, the agent of Mrs. Pease in selling the land to Ray, to the description of the land in the Grubb deed as it appeared of record, West stated to him that there must have been a mistake of the clerk in copying the description, and that on examination of the original deed Ray would no doubt find the description so written as to include all the land sold to Ray. West did not at that time have the original deed, but it was in possession of Mrs. Pease in Chicago, and hence Ray had no opportunity of examining it. At the same time West stated that Mrs. Pease was becoming very impatient at the delay in consummating the trade, which delay was desired for the purpose of examining the title; that her agent Pease had written and telegraphed him to hurry up the trade; and that he was afraid if the trade was not closed at once, she would sell the land to another. As Ray desired the land, and as there was by these representations danger of losing the same by further delay, after a full conference with West, Ray adopted his views as to a mistake of the clerk in copying the description, and that an inspection of the original would show such a description as would give Mrs. Pease good title to all land sold to Ray. The first time Ray saw Pease, the agent of Mrs. Pease his wife, was in Atlanta in May or June, 1892. Ray then, at his first opportunity, called the attention of Pease to the description of the land in the deed as of record, and inquired if it was so written

in the original, saying at the same time that if it was
so written the same would have to be corrected and made
to convey to Mrs. Pease the land she had sold to Ray.
Pease replied that he did not remember how the descrip-
tion was in the original, and that the description on the
record was a mistake.    At Ray's earnest request Pease
agreed to forward the original to West, and did so in
June, 1892.    Then it was for the first time that Ray had
an opportunity of examining it; and in reading it, was
surprised to find the description of the land the same as
set out in his petition and as of record.    He at once
called the attention of West to said description, and in-
formed him that Mrs. Pease had no title under the deed
to the greater part of the land she had sold to Ray, and
that if there was a mistake in said description, it would
have to be corrected.    On December 13, 1892, Ray
adopted the view taken by Mrs. Pease and her agent
Pease, and believing from their assurances that the same
was correct, filed his bill in Fulton superior court alleg-
ing said mistake, and praying that it be corrected and
the deed reformed so as to speak the intention of the
parties; but Mrs. Pease, instead of assisting Ray in his
efforts to perfect her title, actually resisted the bill and
employed counsel to defeat it, and finding he could not
get her assistance and that without it-he could accom-
plish but little, on March 14, 1894, he dismissed it and
began this case.    When he wrote the letters to Pease
he was, and is now, anxious to pay Mrs. Pease all justly
due her.    The money referred to in the letters is that
claimed to be due upon the note maturing in April, 1892.
Pease was in Atlanta in the spring of 1892, and upon
his attention being called by Ray to the description in
the Grubb deed, at once pronounced it a mistake, as-
sured Ray there was no cause for uneasiness, and prom-
ised to send on the original deed for his inspection, and
said if any mistake was in the original, they would make

v 95-11

Ray secure in his title, and spoke so fairly about the matter that Ray felt secure at the time, and inclined to oblige Mr. and Mrs. Pease in any way he could. At the same time Pease represented that it was necessary for them to have the money on the note due April 25, 1892, and, to accommodate him and with the assurance his title would be made good, Ray was then willing to waive his right to refuse further payment until Mrs. Pease had secured a title to the land lying outside of the triangle. At that time Ray had not made an estimate of the land within the triangle, and did not know that he had already paid more than it was proportionately worth. He never promised after he inspected the original deed to pay the entire purchase money before her title was made good; nor did he intend to pay more than the land in the triangle was proportionately worth. It was his purpose to negotiate a loan with the land as security, to pay the balance due, and he was informed by those in the loan business that he could get said loan in the fall of 1893. Finding Mrs. Pease would not take steps to perfect her title, if it could be done, and finding that he had already paid more than the land in the triangle was worth, he refused to pay any more to her until he was certain his rights would be protected. He never had any conversation with H. F. West about paying or refusing to pay the balance due; but all conversations were with A. J. West. At the time he expressed his desire and intention to pay the money, referred to in the affidavit of A. J. West, said conversation was as to the note maturing in 1892, and no other; and Ray then believed the statements of Pease that there was a mistake in the Grubb deed, and that it could and would be corrected in time to protect him. The parties to whom he applied for a loan, as stated in his letter to Pease, had never inspected Ray's title to the land and the title to Mrs. Pease; but after the date of these letters and conversa-

tions with A. J. West, Ray found a party who was willing to make a loan of $12,000 if the title were good. This caused him to realize the danger he was in as to the title, and he then determined to proceed to protect his rights. Had the title of Mrs. Pease been good, he could and would have obtained the money to take up the notes as they fell due. The tract of land as bought by Ray is becoming more valuable every day, has greatly enhanced in value since 1890, and is now worth about $35,000, if Ray can get a good title to all the land described in the bond. In Fulton county great value is set on a good title to realty, and a flaw in such a title makes it almost or quite impossible to sell the same at its full value, and will injure it from one third to almost one half of its value. Mrs. Pease has made no return of property for taxation in Fulton county for 1891, 1892 and 1893. Pease in 1891 returned for taxation realty in Fulton county at a valuation of $10,000, and in 1892 at a valuation of $7,000, returning no other property, and in 1893 returned no property for taxes there. —An affidavit of A. J. West was introduced by plaintiff, to the following effect: He was agent of Mrs. Pease in selling Ray the land, the trade being made by telegram to and from Pease, agent for his wife. Ray paid a full price for the land at the time, giving $2,500 more, as deponent is informed and believes, than any other party had offered. At the time of the trade and up to the signing of the papers, deponent did advise and urge Ray to close the trade with as little delay as possible, for fear Pease would become dissatisfied by the delay and sell to some other party. Deponent was interested in the sale to the extent of his commission. The first time Ray met Pease, to deponent's knowledge, was in deponent's office in May or June, 1892; deponent introduced them and they had a conversation. Pease forwarded to deponent the original Grubb deed; deponent notified Ray he had

it, and Ray came to deponent's office and examined it. Ray may then have called deponent's attention to the defect in the original, and expressed his suprise and regret to find it so, but deponent's recollection is not clear on this point. If Ray ever saw the original before that time, deponent does not remember it. The latter himself believed and presumed the misdescription in the record was caused by the clerk in copying the original deed.

Defendants introduced the petition filed by Ray, December 13, 1892. The allegations in this petition, though not so full as those in the present petition, seem substantially similar; and injunction was prayed as against the bringing of any suits on the purchase money notes, or the transferring of the purchase money notes, etc. To this petition were attached copies of the bond, the purchase money note due 1891, and the Grubb deed. Defendants also introduced the order denying injunction, of February 3, 1893, and the dismissal of the petition by plaintiff, March 14, 1894. Also, defendant's plea to the suits in the city court, which plea sets up the mistake in description in the Grubb deed. Also, letter of Ray to West, forwarded by West to Mrs. Pease, of June 1, 1892, asking Mrs. Pease to sign and execute and return a deed inclosed. The deed referred to in this letter was the deed made by Mrs. Pease and by Pease and Davis as trustees for her to Ray, but not delivered, dated June 1, 1892, conveying to Ray the land described in the bond; and it also was introduced by defendants. Also, letters from Ray to Pease, of various dates from July 13, 1892, to November 30, 1892, making promises to pay and excuses for not having paid, asking indulgence, and containing no reference to any defects in the title of Mrs. Pease. Also, a letter from Ray to A. J. West, of December 3, 1892, containing no reference to any such defects, and stating that Ray trusted, if West

heard from Pease, West could wait until Ray returned from a certain trip. Also, testimony to the following effect: Pease visited Atlanta twice in 1892, once in the spring and again early in the summer, and on each occasion saw Ray, meeting him on the first visit at the office of West & Company, by appointment. The note maturing in 1892 was then overdue, and Pease asked Ray about it. Ray apologized for his delinquencies and asked Pease to be lenient, saying he thought he would soon be able to get the money. During that conversation Ray said nothing with reference to the description in the Grubb deed, nor at that time had he intimated to Pease, or to any one with Pease's knowledge, that there was any misdescription, or that he had any fault to find with the deed or the title; nor did he claim any mistake in the deed at any other interview with Pease. Pease did not state to him that there was no cause of uneasiness, nor promise to send out the original deed for his inspection, nor say that if there was any mistake in the original, Pease or his wife would make Ray secure in his title. Pease did tell Ray he wanted the money, and Ray asked for leniency as above stated, but said nothing about accommodating Pease or Mrs. Pease, or that he would pay on assurance that the title would be made good, or that on such a promise he would waive his right to refuse further payments until Mrs. Pease should secure title to the land lying outside of the triangle. He made no excuse for not paying the note, except that he was hard up. Later in the year Pease was again in Atlanta and met Ray at West's office. Ray said he regretted he had not been able to pay the note, but he had now made arrangements so he could take up all the notes if Pease would have a deed executed by Mrs. Pease. West asked him if he had his money arrangements so he could certainly take up the notes, and Ray said he had. Ray then drew a deed and gave it to

Pease, which Pease sent to Chicago, and it was executed
and sent back to West. At that conversation Ray made
no complaint as to the description nor as to his title.
Mrs. Pease bought the land in 1861 or 1862, and had it
fenced in with an adjoining piece of land which Pease
owned. The fence remained until soldiers tore it down
in 1864. After the war Pease fenced it again with a
wire fence, and built a small house which he used in the
fishery business, which remained there four or five years.
Persons named looked after the property. The taxes
were paid from year to year continuously by Mrs. Pease,
from the time of her purchase until the conveyance to
Ray. Ray's note falling due in April, 1894, is now
owned by A. C. Arms of Chicago, and was transferred
to him for a valuable consideration in 1893. Mrs. Pease
is perfectly solvent. She owns property in Chicago
worth $9,500 above the encumbrances thereon, and owns
a large amount of valuable realty in Atlanta, which is
unencumbered. She has no debts other than encum-
brances on the Chicago property, and no debts overdue
and unpaid. Pease owns valuable property in Atlanta,
which is unencumbered, valuable property in Chicago,
and has $1,500 cash in bank. His liabilities amount to
about $1,500. Taxes for the year 1893, on the property
owned by Mr. and Mrs. Pease in Atlanta, have been paid.
Mrs. Pease is worth above all liabilities $50,000, and
Pease $22,000. Affidavits of A. J. West were intro-
duced, in which were stated, among other things, the
following: Before the bargain was completed for the
sale of the land to Ray, Ray investigated the title and
spoke to West about an alleged defect in the description
in the Grubb deed. The matter of this defect was fully
discussed at the time, and Ray expressed himself satis-
fied to accept the land at the price and upon the terms
proposed and as finally agreed upon, in spite of said
alleged defect. Afterwards, about April 25, 1891, Ray

paid through West the first of the purchase money notes. He did not then complain, nor had he before complained to West, that he was dissatisfied with the title. Since the maturity of the note due in April, 1892, West, as the agent of Mrs. Pease and her trustee, has made repeated demands upon Ray for payment, and has received many promises to pay. Up to a week before this suit was filed, Ray had never intimated to West, as agent of Mrs. Pease, that he would seek to defer the payment of his indebtedness because of any of the matters now complained about; always offering as his sole excuse for the delay his inability to raise enough money to meet the indebtedness, which he admitted to be just and due. About June 1, 1892, Ray brought him a deed to be executed by Mrs. Pease and her trustee, with the request that he have it executed and returned, saying he was preparing to pay the entire balance of the purchase money and desired the deed to be ready for that event. This deed is in the handwriting of Ray. In the spring of 1890, about the time and before Ray purchased the land, Ray stated to West that upon inspecting the records he discovered there was an imperfect description in the Grubb deed, and discussed the matter at some length, finally stating that he did not consider the defect of great materiality, and would buy the property notwithstanding. Something was said in the conversation as to whether the defect might not have been occasioned by a clerical mistake in recording the deed, and whether the original deed might not contain a more perfect description. West does not remember who suggested that it might be a mistake of the clerk, but thinks it was Ray. He stated to Ray that he did not know what the original deed contained, as he had not then seen it. Whatever was said about it was in the nature of a mere surmise, and it was not stated by either of them, nor accepted by Ray, as a thing to be relied upon

in determining whether Ray would purchase. At the time of the negotiations there were others proposing to buy the land at a smaller price than that at which it was finally sold to Ray. Pease, as his wife's agent, was anxious to sell to raise money to buy certain land in Chicago. Ray was informed that Pease was growing impatient and would probably accept the offer of the other parties, and Ray, having expressed his satisfaction with the title, closed the trade in order that he might not lose what he considered an advantageous trade. Ray at no time said that the imperfect description in the Grubb deed would have to be corrected, nor did West learn that Ray considered it material, or would claim that he should not pay the purchase money, until the bill filed by Ray in 1892 was read to West. H. F. West, the other member of the firm of A. J. West & Company, made affidavit that at no time after the bargain of the land in 1890, had Ray ever intimated to him that he did not intend to pay the balance of the purchase money, for any cause, but promised, sometimes deponent and sometimes A. J. West, to pay his past due indebtedness on the land when he could succeed in getting together the money, offering as his only reason for the delay his inability to get the money.

The injunction was denied, and Ray excepted.

LAVENDER R. RAY and JULIUS L. BROWN, for plaintiff. KING & ANDERSON, for defendants.

SIMMONS, Chief Justice.

1. It will be seen from the official report of the case, that the controversy between these parties arises from a defective description of the land conveyed by Grubb to the trustees of Mrs. Pease, it being contended by the plaintiff in error that the description is so uncertain as to render the deed void, and that if not void, it should be reformed. That description is as follows:

"All that tract or parcel of land lying and being in the seventeenth district of originally Henry, now Fulton county, in said State (Georgia), being part of land lot number one hundred and six in the seventeenth district aforesaid, bounded as follows : commencing at the north-west corner of said lot, running south on Boring lot fifteen hundred feet; thence east six hundred and eight and a half feet to a stake corner; west six hundred and eight and a half feet to commencing corner, containing ten acres more or less."

The lines here given as bounding the tract, it will be seen, do not form a complete boundary. Courts, however, will not declare a deed void for uncertainty as long as it is possible, by any reasonable rule of construction, to ascertain from the deed what property was intended to be conveyed. A description of the land which can be made certain will be treated as sufficient, and the land will pass to the grantee. 1 Shep. Touch. p. 250; 2 Am. & Eng. Enc. of Law, art. Boundaries,. p. 496. Looking to the above description, we find that there are two lines which are absolutely certain; the first, which commences at the corner of a certain lot and runs south 1,500 feet, and the second, which commences at the south end of the first and runs east 608½ feet. The next line given can also be made certain. It is of the same length to half a foot as the second line, and although the point at which it begins is not stated, it is described as running west to the commencing corner. If, therefore, we run a line from that corner due east 608½ feet, we find the point at which the last line of the description should commence when it begins to run west. Construing the description in this manner, we then have three certain lines, which make three sides of a rectangle, thus: ⌐ The question then is, will the court supply the fourth or missing side? In the case of Commonwealth v. Roxbury, 9 Gray, 490, where the question was whether a side which had been omitted in the description could

be ascertained, three sides being given, SHAW, C. J., said: "A deed is not to be held void for uncertainty because the boundaries are not fully expressed, when by reasonable intendment it can be ascertained what was considered and understood by both parties to be embraced, and intended to be embraced, in the description. The obvious and legal course, we think, is to lay down a plan on the land according to ascertained boundaries, abuttals and monuments, on these three sides, and thus see where the fourth would come." While we have no abutments or monuments in this description, we have, as above shown, three fixed lines of courses and distances. Applying this rule to the courses and distances and laying down a plan on the land accordingly, we have the three sides as above described; and all that it is necessary to do, in order to supply the fourth side, is to run a line north and south between the *termini* of the two lines which are designated in the description as running east and west. In our opinion it would do no violence to the intention of the parties to supply this line. It seems to us to be manifest from the description in the deed that the grantor intended to convey all the land included within these four sides. The fact that the land thus included contains twenty acres, while the deed describes the quantity as ten acres more or less, makes no difference. Where a tract of land is described in a deed by metes and bounds, and as containing so many acres, more or less, the quantity must yield to the metes and bounds. If the measurements contain twenty acres, that number of acres is conveyed to the grantee, although the deed may describe the number as ten, more or less. 3 Washburn, Real Property, *p. 630 (5th ed. p. 427).

The record discloses, moreover, that when the trustees of Mrs. Pease purchased the land from Grubb, they inclosed the tract with a fence on the four sides as above

described; that this fence remained there, with the knowledge and acquiescence of the grantor, for several years and until destroyed; and that after its destruction, it was replaced around the whole tract; thus showing the construction put upon the deed by the parties themselves. It is a well settled rule of law that where the description in a deed is susceptible of different constructions, or where the deed contains two inconsistent descriptions, the grantee has a right of election between them, and when he exercises this right, the grantor is bound thereby; this rule being based upon the familiar principle of construction, that inasmuch as the fault is assumed to be in the grantor, if the terms of the description are uncertain, the deed shall be construed most favorably for the grantee. 3 Washburn, Real Property, *p. 628 (5th ed. p. 422); 2 Am. & Eng. Enc. of Law, 496; Armstrong v. Mudd, 10 B. Monroe, 144, 50 Am. Dec. 545.

The grantees in the deed in question having elected to supply the missing line in the description, by building the fence on this line as well as upon the others, with the knowledge and acquiescence of the grantor, the latter was bound thereby, and the grantees obtained title to the whole twenty acres within the metes and bounds above described.

2. This being the proper construction of the deed in question, and the deed, according to this construction, covering the land sold by Mrs. Pease and her trustees to the plaintiff in error, there was no merit in the contention of the plaintiff in error that there was an outstanding title remaining in Grubb or his heirs, in consequence of the alleged ambiguity or uncertainty in the description contained in that deed, or that the deed required to be reformed. The court below, therefore, did not err in refusing to enjoin the action against the plaintiff in error upon his notes for a part of the purchase

money, even though the plaintiff in that action may have been insolvent and a non-resident.

*Judgment affirmed.*