BUSSEY, adm'r, *et al. v.* JACKSON *et al.*, ex'rs.

This being an action for the recovery of land, upon the trial of which the plaintiffs made out a prima facie case, and the defendants resting upon an alleged prescription under color of title for more than seven years, the burden was upon them to affirmatively establish the same by evidence. Having failed to do this, the verdict in their favor was *not supported*, and was, therefore, contrary to law.

Argued February 18, — Decided April 12, 1898.

Complaint for land. Before Judge Candler. Bartow superior court. July term, 1897.

*John. W. Akin*, for plaintiffs.
*J. W. Harris* and *J. H. Wikle*, for defendants.

LITTLE, J. Mrs. Mary C. French and Mrs. Elizabeth G. Tarver brought an action of ejectment against George L. Jackson and Eddie L. Jackson, as executors of the last will and testament of Zimri W. Jackson deceased, to recover a half-interest in lots of land Nos. 286, 291, 358 and 363, all in the 4th district and 3d section of Bartow county, Georgia. From the evidence introduced on the trial it appears that the plaintiffs claimed the undivided half-interest sued for under the following conveyances: (1) Deed from Christopher Dodd conveying to William Solomon a half-interest in various lots, including those sued for, said deed dated July 1, 1869, recorded in clerk's office, Bartow superior court, December 18, 1869, in which deed it was recited that Dodd and Solomon owned these and other lands jointly and that Dodd is in possession, but that such possession is the possession of himself and Solomon jointly. (2) Certified copy of the will of William Solomon, duly probated, and letters testamentary duly issued to Susan L. Solomon as executrix of said will, who duly qualified as such. This will gives the executrix power to give away, or dispose of in any manner she pleases, all of the property of said William Solomon, or sell the same at public or private sale, in her discretion. (3) Deed of Susan L. Solomon, as executrix of William Solomon's will, to the plaintiffs in this case, conveying an undivided half-interest in the lots of land above mentioned, together with various other lots. It was conceded that the lots

in controversy all lie north and south in one range, No. 286 being the most northern, and No. 363 being the most southern of said lots, and Nos. 291 and 358 lying between the two.

The defendants supported their claim by the following documentary evidence: (1) Sheriff's deed made July 6, 1876, to William T. Wofford, under sale for State and county taxes for 1875, against Christopher Dodd, amounting to $67.00 principal. The levy of the tax execution was made on the four lots in dispute, and two others in the same district and section. Neither the execution nor the levy set out the ownership of the property, but the levy specified the land as in the possession of Dodd. The execution bore an entry by the sheriff, that he had sold these lots to William T. Wofford for $85.00, but did not say whether the lots were sold together or singly. The deed was properly executed, but was not recorded until sometime in the year 1893, nor was the fi. fa. recorded before that time. (2) Deed dated in the year 1878 from William T. Wofford to Zimri W. Jackson, defendants' testator, which was not recorded until October 18, 1881, but which appears to have been properly executed. This deed conveyed the lots, with warranty, by the following description: "All that tract or parcel of land situated, lying and being in the 4th district and 3d section of said county [Bartow], known and distinguished as lots Nos. 286, 291, 357, 358, 359 and 363, each of said lots containing forty acres more or less, the whole tract containing 240 acres more or less." The defendants based their right to the undivided half-interest in the premises in dispute, on the conveyances above referred to, and seven years adverse possession of all of the land, which, as they contended, gave them a title by prescription to the undivided half-interest for which plaintiffs sued.

From the oral evidence introduced on the trial it appears, that the public road runs east and west along the northern boundary of lot No. 286; that there is no other road upon the property. except the settlement road which runs southward along the edges through the western part of Nos. 286 and 291. In the fall of 1876, according to the testimony of a witness, General Wofford, who, as before seen, had a deed to the land

as a whole, and under whom the defendants claim the entire interest, went out to see the lots and found there a man named Rutherford, who was cultivating a patch of about two acres in the southern part of lot No. 286 as a tenant under one Lochridge, who entered under Christopher Dodd. General Wofford permitted Rutherford to remain as his tenant the balance of the year and the next year. Rutherford attorned to Wofford. No one ever lived on either of the lots at any time. In the years 1877 and 1879 one Loveless cultivated this patch for and as the tenant of General Wofford, and other tenants of General Wofford cultivated it in the years 1880, 1881, and 1882. No one cultivated or did anything on lot No. 286 after 1882. After that year nothing was done upon that lot, except that Jackson occasionally cut and hauled firewood off of it. There has not been more than from 30 to 50 cords cut off of all these lots from the time General Wofford claimed it and since Jackson claimed it. There was a fence left around the patch, but it was not kept up after 1882, and there is none there now—it was allowed to go down. There was never any fencing or repairing done on this lot after 1882; nor was there any cultivation after that time; the patch grew up in bushes and trees. In 1882 one Padgett, as the tenant of Jackson, defendants' testator, built a one-roomed log crib on lot No. 291, which he used as a storage-place for cotton, corn and peas (presumably raised and gathered from other lands, as he never lived on nor cultivated any of the land in dispute) as he would gather them, and he would keep them there and use these articles from it. For three or four months in every year on an average, the crib was empty. There were one or two years when Padgett did not use the crib at all; that was when he was living on the Foster place. With this exception, he used the crib in this way up to 1892, and since that time a brother of Padgett has used the crib in about the same way. By another witness it was shown that tenants of General Wofford cultivated the patch on lot No. 286 from the fall of 1876 through the year 1882. It was also shown by this witness, that he and his brother used the crib for storing crops as they gathered them; that they put them in there when harvested and gradually used them out;

that there were a few months in every year, except 1883, when there would be nothing in the crib; that in 1883 there was something in the crib all the year; that witness did not himself use the crib after 1883 until the year 1892; that his brother used it in the manner indicated for one or two years that witness knew; that his brother lived on the Foster place one year, and did not use the crib that year until the fall. There never was any clearing or fencing, or anybody living on or using the other two lots, viz. 358 and 363, except that Jackson occasionally cut firewood from them.

The plaintiffs and defendants claimed under a common grantor, Dodd. The plaintiffs therefore were not required to show title in such common grantor, but having traced title in themselves from the same source, their right to recover was, prima facie, established, and the burden was cast upon the defendants to show a better title. Civil Code, § 5004. The burden being thus put upon them, the defendants contended that they had acquired, as against the plaintiffs, a title by prescription based on color of title and more than seven years adverse possession of the premises. For such adverse possession, they relied upon the cultivation of the patch on lot No. 286 and the use of the crib on lot No. 291, claiming that the deed under which they held conveyed all of the lots to them as one tract. They claimed that all the lots were embraced within one general description contained in the deed, and that being in actual possession of a part of the tract, composed of the several contiguous lots, that possession would, under the provisions of section 3586 of the Civil Code, be deemed to extend to the boundary of the tract. See *Carstarphen* v. *Holt,* 96 *Ga.* 703. It is not necessary, however, here to decide whether the description contained in the conveyances so embraced the several lots in one general description as constituted only one tract, so that under the law actual possession of a part of the tract would amount to constructive possession of the remainder. Nor is it necessary to decide whether the use of a building, erected for storage purposes at such seasons during each year as would serve the purposes for which such building was erected, is such an adverse possession as will support a prescriptive title which

must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right, etc.

The defendants' evidence of adverse possession showed, by one witness, that' tenants of Wofford had cultivated the patch on lot No. 286, beginning with the fall of 1876, through the years 1877, 1879, 1880, 1881, and 1882. By another witness it was shown that tenants of Wofford cultivated the patch from the fall of 1876 to the end of the year 1882. So that by neither witness is a continuous possession for seven years, evidenced by cultivation, shown. The first witness shows a possession manifested by cultivation of six and a half years, broken however, by a failure to cultivate at all in the year 1878, and the latter witness, while showing an unbroken possession by cultivation, extends such possession only six and a half years. As to the use of the crib, which was erected on lot No. 291 in the year 1882, it was shown by one witness that this crib was used by Padgett during a portion of each year from the year 1882· until the commencement of the suit in 1893, with the exception of one or two years when he lived on the Foster place and did not use the crib at all, so far as witness knew. By another witness it was shown that the crib was not used for one year during that time until the fall of the year. Here then was a period of not more than twelve years during which the crib was used. For at least one year, or a good portion thereof, during that time, the use of this crib was abandoned. The tenant had moved away to another place and had discontinued the use of the crib. Just when this discontinuance took place does not appear. It might have taken place after seven years use consecutively of the crib by the tenants of the defendants, or it might have taken place at such time in a few years after the crib was built as to have enabled the defendants to have used the crib during each year for more than seven years thereafter, before the filing of the suit; or it might have intervened just half-way between the twelve years, and thus left the defendants with only six years on either side. If in fact the defendants had used this crib for seven years in succession, the burden was upon them to affirmatively establish the same by evidence; and having failed to do this, even assuming, without deciding, that such a

possession would support a title by prescription, the verdict in their favor was not supported, and was therefore contrary to law. Nor was the occasional cutting and appropriating timber from the land by Jackson such possession as would ripen into title by prescription. *Strong* v. *Powell*, 92 *Ga.* 591.

*Judgment reversed. All concurring, except Cobb, J., absent.*