## CARSTARPHEN v. HOLT.

1. While a declaration and a verdict thereon in the plaintiff's favor,
upon which no judgment was ever entered, are not admissible
to show an adjudication of the matters set forth in such declara-
tion, or as a conclusive estoppel against the defendant therein as
to such matters; they are competent for the purpose of showing,
as between the parties and their privies in estate, the independent
fact that such a verdict was rendered in the case in which that
declaration was filed, and are admissible, if otherwise relevant, to
show that the parties were at that time at issue upon the partic-
ular facts therein pleaded, and as a circumstance, in connection
with other and independent evidence, tending to show acquies-
cence in the verdict and its consequences, to be weighed by the
jury in determining whether such acquiescence was attributable to
the verdict itself, or to other and distinct causes.

2. The declaration and verdict offered in the present case were, in
view of all the facts in evidence, properly admitted; but the
charge of the court in this connection was erroneous, in that it
gave the jury too great latitude in dealing with this evidence, and
allowed them to attribute to the verdict a degree of weight not
authorized by law.

3. Where a deed conveys several distinct tracts of land lying con-
tiguous to each other, but not covered by one general description
which would embrace them all, and the grantee enters into the

possession of one of such lots only, prescription will not run in his favor as to the other of such lots until after his deed has been recorded; but as to that lot into the possession of which he actually enters, prescription will run whether such deed be recorded or not.

4. Where, under such circumstances, the defendant undertakes, by prescription, to establish the original boundary under her deed which conveys to her several separate tracts, including the one upon which she seeks to prescribe, she being in the actural possession of the latter, it is error for the court to charge generally, in effect, that where a person seeking to prescribe claims under a deed, prescription will not run in her favor until after her deed has been recorded. As to either of the several tracts of which she is in actual possession of a portion, prescription will run whether the deed be recorded or otherwise.

5. Where, upon the trial of an action of ejectment, it appears that the plaintiff and defendant are each, respectively, in the actual possession, under color of title, of portions of tracts of land so situated with respect to the disputed premises as that the latter are claimed by each of such respective proprietors to be embraced within the boundaries of the deeds under which they respectively hold, the question becomes one of boundary, and prescription does not run in favor of either against the other as to such property so constructively in the possession of both; and in such a case, the question of prescription is only in the first instance involved in so far as it may be necessary to establish the plaintiff's title, in the event that the question of boundary be determined in favor of his contention.

6. Where coterminous proprietors settle between themselves a question of disputed boundary, either by acquiescence or otherwise, and afterwards one of them conveys his premises so as to include the premises conceded to the other in the adjustment of the question of boundary, the grantee of the latter cannot prescribe upon such premises as against his coterminous proprietor, unless he enter in good faith without notice of such settlement of such disputed boundary, and hold for the requisite period adverse possession of the same.

7. Where the question involved is one of disputed boundary, and either of the several conveyances under which the respective parties claim is so indefinite and equivocal in matter of description as not to designate the limits of the particular tract sought to be conveyed, such conveyance may, as against the grantor and his privies in estate, be made certain by the election of the grantee; and where both parties claim from a common source, such infirmities in their several conveyances may be cured, either by the establishment of a boundary by the common grantor, coupled with the acceptance of such common boundary by the several grantees, or by the election of the latter to locate their several

tracts upon the land of the grantor with reference to a common boundary mutually recognized among themselves.

8. The questions of prescription made by the defendant, having been concluded against her by the instruction of the court, as stated in the 5th head-note, upon the effect of her failure to record her deed, and the evidence being closely conflicting upon the questions of fact involved in the contentions of the parties touching the disputed boundaries, a new trial should have been awarded.

October 5, 1895. By two Justices.

Complaint for land. Before Judge HARDEMAN. Bibb superior court. November term, 1894.

HARDEMAN, DAVIS & TURNER, for plaintiff in error.

C. C. KIBBEE, H. V. WASHINGTON and S. A. CRUMP, contra.

ATKINSON, Justice.

The questions made in the present case arose upon the following facts: The plaintiff brought an action of ejectment, in the statutory form, against the defendant for twenty-six and seventy-six one hundredths acres of land in lot 334 in the 13th district of Bibb county, alleged to have been bounded on the north by lands of the estate of Asher Ayers, west by lands of F. S. Jones and Nancy Carstarphen, south by lands of Asher Ayers' estate known as Harris place, and on the east by lands of the American Investment Company, being part of fifty acres of land lying in the northeast corner of said lot 334, being a rectangle in shape, the north and south lines of which are 550, and the east and west lines are 2,130 feet, and being the same lands recently in litigation between the American Investment and Loan Company and Nancy and T. J. Carstarphen. It appeared from the abstract of title, that the plaintiff claimed under a warranty deed from William A. Johnson to Robert S. Holt, dated December 31st, 1852, and it was admitted upon the trial of the case that the plaintiff, as an heir at law of Robert S. Holt, received the land, by proper paper title, upon the distribution of the

latter's estate among his several heirs. The plaintiff also claimed a title by prescription: 1st, under color of title by seven years' possession; and, 2d, by virtue of twenty years' actual adverse possession independent of his color of title. The defendant pleaded the general issue, and in like manner with the plaintiff, set up title by prescription, both under color of title and by actual adverse possession for twenty years. The deed under which plaintiff's ancestor first claimed title to the premises in dispute described the premises conveyed by William A. Johnson to Robert S. Holt as being fifty acres on the northeast corner of lot 334. In none of the subsequent papers under which the plaintiff claims does there appear to have been any more definite or accurate description of the premises than as stated in the original deed above referred to; certainly none of date sufficiently remote from the date of the filing of the suit or from the date of the trial, as would serve as a basis for prescription. It appears from the record, that the defendant's title to the property originated in a deed dated September 29th, 1859, by which T. D. Ousley and S. P. Bailey, who derived their title from Newtagate Ousley, conveyed to Mrs. Sarah Townsend, in consideration of four thousand dollars, several tracts of land as follows: lot 308 containing 202½ acres; 82½ acres on northwest corner of lot 334, and 135 acres of lot 309 in 13th district of Bibb county. This deed was recorded on January 9th, 1869. The defendant showed in regular succession a chain of title from Mrs. Sarah Townsend to herself. The premises in dispute were claimed by the plaintiff to be a portion of the fifty acre tract of land in the northeast corner of lot 334, which was conveyed by William A. Johnson to the ancestor of the present plaintiff. The defendant claimed that the premises in dispute constituted a portion of the 82½ acre tract lying in the northwest corner of lot 334, which

was conveyed by Ousley and Bailey to Mrs. Townsend, under whom she claimed. The evidence shows that both the plaintiff and defendant for a great number of years had been in the actual possession of a portion of the several tracts respectively claimed by them under their several conveyances, and which were embraced within the boundaries of lot 334. The contention of the plaintiff was, that the true boundary between his fifty acre tract and the 82½ acre tract of the defendant would include the disputed premises within his tract; and the contention of the defendant was, that the true location of the original boundary between such tracts would result in including the disputed premises within her tract of 82½ acres. The plaintiff, upon the trial of the case, amongst other things, offered in evidence an admitted copy of an original suit for trespass, filed in Bibb superior court on the 25th day of September, 1854, by Robert S. Holt, the ancestor of the present plaintiff, against Newtagate Ousley, under whom the defendant claims, upon the tract of land described as being "50 acres of land on the northeast corner of lot 334 in the 13th district of said county"; and, together with such admitted copy declaration, a copy verdict of the jury rendered in that case finding in favor of the plaintiff. No judgment ever appears to have been entered up on the verdict thus rendered, and to its admission the defendant objected upon that ground, and upon the further ground that the declaration and verdict did not of themselves show that the alleged trespass was committed upon the premises in dispute. Both of these grounds of objection the court overruled and admitted the evidence. Amongst other things, upon the trial of the case, the court charged the jury, in substance, that where a person setting up a prescription based upon color of title, claims under a deed as such color of title, prescription will not run in favor of such person until after the deed

has been recorded, and that if there are any deeds under which color of title is claimed, the jury will consider their date, upon the subject of prescription, from the date of the record, and not from the date of such deeds. The defendant's deeds in her chain of title having none of them been recorded until many years after their execution, she complains that such instructions were prejudicial to her case. The evidence introduced upon the trial of the case upon the question of prescription and boundary assumed a wide range, was voluminous and conflicting; but for the purposes of this opinion, it is not necessary to state it in greater detail than as hereinbefore set out. Exception was also taken to the charge of the court, which will be hereinafter set out, on the point as to what weight should be given by the jury in their deliberations to the verdict and declaration heretofore referred to.

1, 2. We do not think the court erred in admitting in evidence in favor of the plaintiff the declaration and verdict above recited. Had the latter been offered or relied upon as evidence of a final adjudication of the matters and things set up in the declaration and as operating as an estoppel, or had it not been legally competent for any other purpose, the objection would have been well taken. It is well settled law, that in order to serve as an estoppel by *res adjudicata*, there must have been a final judgment pronounced by the court on the matter in controversy. Verdicts and other findings not followed by the solemn judgment of the court cannot operate as an estoppel upon parties with respect to the matters called in question. Bigelow on Estoppel, p. 51. This verdict and declaration, however, were relevant upon the special matter at issue in this case. The question which became finally involved was more a question of boundary than of title; and while the verdict itself would not conclude the defendant in that case,

or his privies in estate, upon the question of title or boundary, it might be material in the establishment of the independent fact that, touching the title to this property, there was many years before a pending controversy between the respective grantors of the parties in the present suit. In the establishment of the boundary now sought to be set up, it would be relevant in connection with other evidence showing a subsequent acquiescence by the parties then litigant in the disputed boundary, and might be considered by the jury in determining whether such acquiescence in a given boundary, if such acquiescence were in fact proven, was referable to the verdict, or to some other independent cause. When admitted in this way, and with these qualifications, it was receivable in evidence, as innumerable minor facts are every day received, not as concluding either of the parties, but as projecting a side-light upon their conduct and illuminating their subsequent relations with each other; thus enabling the jury, by a clear understanding of the relations between the parties, to determine what was likely to have been, or what was in fact, the final basis of adjustment reached by them. It is in controversy between these parties as to whether there ever was an agreed boundary between their respective grantors. This evidence of an ancient controversy between them is admissible as affording a motive for an agreement upon the part of each of them. But we think in its charge to the jury, the court gave too great weight to the declaration and verdict now under consideration. In a portion of the court's charge, to which the defendant excepted, the jury was instructed as follows: "Plaintiff has offered in evidence an original declaration filed in this court, returnable to the November term, 1854, wherein Robert S. Holt, one of plaintiff's feoffors, sought to recover of Newtagate Ousley, one of the defendant's feoffors, damages for alleged trespass upon the fifty

acres of land now in controversy, with a verdict of the jury thereon finding for said plaintiff against said defendant. He has also submitted other evidence to show that said controversy covered the issues now being tried; and insists that said judgment operates as an estoppel, and binds the defendant in this case also. Now, I charge you, if you believe from the pleadings and evidence submitted that suit was instituted and a verdict rendered in favor of said Holt against said Ousley for trespass upon the tract now in dispute, that the verdict rendered, though not conclusive between the parties, is an established fact to be considered with other evidence as indicating what the coterminous proprietors then did not assent to on the question of possession and ownership. If the result of this verdict was to establish a line between them, the line so established would be *prima facie* the true line, though in fact the true boundaries were not correctly defined." The real vice of this instruction is to be found in the last sentence above quoted. The jury are instructed that if the result of the verdict was to establish a line between them, the line so established would be *prima facie* the true line. The verdict, unsupported by a judgment, could not have had of itself the effect to establish a line between the parties, even if the matter involved were one directly of boundary, and the verdict had itself purported to establish such boundary. The court in this instruction submitted to the jury, as the possible effect of the verdict, an effect which was legally impossible. What he should have instructed the jury was, that if as the result of this verdict, the verdict being the inducement to such action by the parties, they of themselves agreed upon and established a boundary, or subsequently acquiesced in a recognized boundary, then that would be the true boundary between the parties, even though in the conveyance of neither was the boundary accurately defined;

and that such a boundary thus established would be binding not only upon the parties themselves, but upon their privies in estate. Thus, the verdict would have been accorded its true weight, and the jury would not have felt at liberty to regard the verdict as being within itself legally sufficient to fix the boundary. Another error in the charge to which exception is taken, is to be found in the first sentence of the part quoted, in which the court states to the jury that the plaintiff has offered in evidence the declaration and verdict now in question, defining it as an action in which the plaintiff's feoffors sought to recover of one of the defendant's feoffors damages for trespass upon *the fifty acres* now in controversy. As to whether the land now in controversy was the particular land covered by the original suit, was necessarily one of the closely contested questions in the case; and the court should not, in defining the effect of the declaration and verdict, by its charge identify the land sought to be recovered in the present instance as being the same land involved in the old trespass suit.

3, 4. The deed under which the defendant claimed title to the premises in dispute embraced by separate and independent description three several parcels of land lying contiguous the one to the other, but not embraced by metes and boundaries within one general description which would cover them all. She claimed actual possession, however, of a portion of one of these parcels of land, and by virtue of such possession sought by prescription to extend her possession constructively over the remainder of such parcel, including within such constructive possession the premises sued for in this case. Her deeds were not recorded in time, nor within such time as that, computing her possession from the date of the record of such deeds, would have acquired a title by prescription. If, however, the deed were otherwise sufficient as the basis of a prescription, her

possession being computed from her entry under the un-recorded deeds, she might have had a prescriptive title. Under such circumstances, the court charged the jury, in substance, that where a person seeking to prescribe claims under a deed, prescription would not run in her favor until after her deed was recorded.   We think this instruction was error.   Prescription upon a definite tract of land of which the prescriber is in actual possession of a portion, is not dependent upon the registration of the deed, but the possession itself is the evidence of an adverse claim which will mature, after an occupancy for the term prescribed by law, a prescriptive title.   In order to admit a deed to record, it must be, in point or execution, perfect in all its details, and executed in strict conformity with law.   Failing to come up to this stand-ard of excellence, under the view taken by the trial judge, the paper relied upon as such could not amount to color of title, and nothing short of a perfect deed could be the basis of a prescription.   The code, however, and the construction placed upon its provisions by this court, both recognize as color of title which will suffice as the basis of a prescription any written evidence of title, however inartistic in form or imperfect in point of exe-cution, which serves to define the extent and limit of the prescriber's claim.   Indeed, papers which would not under any circumstances be admitted to record, have been distinctly held sufficient as color of title.   For instance, a written agreement between tenants in com-mon to divide land among themselves, though made by the administrator of one of the tenants in common, without an order of court for the partition, has been held to be admissible in evidence as color of title. *Shiels* v. *Lamar*, 58 *Ga.* 590.   It has been held that a bond for title is admissible in evidence as color of title, and may be the basis of a prescription against any person other than the obligor in the bond.   *Burdell* v. *Blain,*

66 *Ga.* 169; *Garrett* v. *Adrain*, 44 *Ga.* 274. Even so informal a conveyance as a *fi. fa.* with entries of levies thereon, in which levies a tract of land is described, and which is, by another entry, returned as sold by the sheriff, has been held sufficient as color of title. *Walls* v. *Smith*, 19 *Ga.* 8. Where independent tracts lying contiguous one to another are embraced within the same deed, it has been held in this court that the registration of the deed might serve as constructive notice of an adverse holding upon those tracts of which the party prescribing was not in the actual adverse possession; but it has never been held, so far as we are advised, that if a person be in the actual adverse possession of one of the tracts under such a deed, as to such tract prescription would not run in his favor as to that part of the tract not covered by his actual possession, though the deed be not recorded. Indeed, the language of the code settles the proposition, it seems to us, adversely to the instruction of the trial judge. Code, §2681, provides that "constructive possession is where a person having paper title to *a* tract of land, is in the actual possession of only a part thereof. In such a case the law construes the possession to extend to the boundary of *the* tract." So that while as to those tracts embraced in the deed to which the prescriber has a paper title, but of no portion of which he is in the actual possession, prescription would not run unless his deed be recorded, yet as to that tract so described in his deed independently of other tracts as to enable it to be the basis of a prescription, if he be in the actual possession of a portion of such tract, prescription as to that tract would run in his favor, although as to the others it would not. In cases of prescription, the record of the deed is only material where it is sought constructively to extend a possession over independent tracts, no portion of which is in the actual possession of the prescriber. If independent parcels of

land be so described in a conveyance by metes and boundaries as that they will be all embraced within one general description, and a person, under such a deed, enter into the actual possession of any portion of such general tract, prescription will run in his favor as to all of the tracts embraced within such general description. The effect of the charge of the court above referred to was practically to conclude the defendant upon the whole subject of prescription; for, if she had established to the satisfaction of the jury that she was in the actual possession of the particular tract of which it was claimed the disputed premises constituted a part, yet if it further appeared that the conveyance under which she entered, and which she sought to set up as color of title, was not recorded, then, under the view the court took of the question, prescription would not run in her favor, and the jury would have been bound to find against her. We think the contrary to be the law as to that particular tract.

5, 6. Under the facts as they come to this court certified in the record, it is doubtful whether the question of prescription under color of title is involved at all. The plaintiff claims fifty acres of land in the northeast corner of lot 334. The defendant claims under a conveyance of originally eighty-two and one half acres in the northwest corner of that lot. Neither of these conveyances purport of themselves to establish the boundary between the two subdivisions of the original land lot claimed by the respective parties. The question made in the case then becomes one of boundary. If the original boundary established by the grantor is where the plaintiff claims that it was, the principle of prescription might become important in the establishment of his title to the disputed premises, if the evidence on the question of boundary were determined in his favor; but considering the deeds of the plaintiff and defendant, as

they seem to have been recognized by both parties in the court below, as sufficient color of title upon which to base a prescription, if it appear that the tracts of land respectively claimed by the parties are so situated with respect to each other as that they may be embraced within the boundaries of each deed, then no prescription, upon a constructive possession only, would run in favor of either of the coterminous proprietors against the other, and the whole question in the case would at last be remitted to the question of fact as to where the original boundary was in fact established. It is claimed that Newtagate Ousley, who appears to have been the original feoffor in the defendant's chain of title, and W. R. Holt, the ancestor of the plaintiff and through whom he claims title, were at one time in partial actual possession of these respective parcels. Whether either of them was ever in actual possession up to the boundary respectively claimed by the parties now at issue, is a question of fact involved in some obscurity. That there was a controversy pending between them at one time touching this question of boundary seems certain from the declaration and verdict which were introduced in evidence in this case. Whether there was a subsequent settlement between them of this mooted question, or whether there was a boundary claimed upon the part of one of the parties and acquiesced in by the other for a period of seven years, are equally doubtful questions of fact. But it seems to be claimed by the defendant in this case, that even though such a settlement of boundary was had between those parties, and that they were the respective owners of the several tracts of land, yet, after this settlement her immediate feoffors bought from Newtagate Ousley the eighty-two and one half acres according to the original boundary claimed by her, and without reference to any settlement or acquiescence in the settlement of this boundary by her

feoffors.  Boundaries, when once settled, either by an agreement between the parties, by the judgment of a court, or by acquiescence for the period of years required by law, are so far fixed as between the parties, that they are binding upon them and their privies in estate.  If, subsequent to the settlement of such boundary, one of the coterminous proprietors shall, notwithstanding such settlement, convey his portion of the premises according to the original boundary to another, who takes without notice, then such latter person might, under such a conveyance, acquire a prescriptive title to the premises according to the original boundary.  But in order for such a deed to operate as color of title against a coterminous proprietor so as to extend the possession of such purchaser over the property lying between the agreed and the original boundary, there must have been an actual adverse possession of such land lying between such boundaries under all those conditions which are ordinarily necessary under the statute to make good title by prescription.  There is no such thing as a secret prescription.  A possession to be the foundation of such a title must be open, notorious, adverse, uninterrupted, exclusive; and hence a possession not enlarged beyond the point held by such coterminous proprietors before a sale to a purchaser by one of such coterminous proprietors, would neither be adverse to the other coterminous proprietor, nor so notorious and exclusive in its character as to inform the latter of the adverse claim.  It is necessary, therefore, in order to found a prescription to such disputed premises under such a conveyance, that there be an actual adverse possession of some portion of the disputed premises by such purchaser.

7. In determining the question as to what was the true original boundary between these respective tracts of land, it occurs to us that the controlling inquiry must be as to the exact point of its location, either by the

respective grantors under whom the plaintiff and defendant claim, or its location at the election of the respective grantees, the deeds of themselves affording no *data* from which the boundary could by reference to their respective terms be established. In each instance the deeds are equally indefinite in matter of description. Holt bought "50 acres on the northeast corner of lot 334" and Ousley bought "82 1/2 acres on the northwest corner of lot 334." From whom Newtagate Ousley under whom the defendant claims, and William A. Johnson, who sold to Robert S. Holt under whom the plaintiff claims, bought, and whether from a common grantor, does not appear. The deeds alone would be inoperative as a conveyance of land, because of uncertainty of description. In none of them is it recited whether the land is triangular in shape, rectangle, square, or in what shape the respective numbers of acres are to be taken out of the respective corners of the lot; but this defect in matter of description is curable at the election of the grantee, for it was early held, "that where a grant is general, as the moiety of a yard land, or 120 acres in a certain waste, without certainty in what part of the waste the grantee shall have the land, or the special name of the land or how it is bounded, and without any certain description of it, the grant may be made good by the election of the grantee, if the grantor be a common person; but not if he be the crown, in which latter case the grant is altogether void." See Hungerford's case, 1 Leon. 30; Brand *v.* Todd, Noy. 29; Elphinstone on the Interpretation of Deeds, p. 107. This principle is likewise recognized in the case of *Ray* v. *Pease*, 95 *Ga.* 153. If upon the execution of these several conveyances the grantor, though not designating the boundary in the deed, in fact located and established such boundary, and the grantee entered in possession with reference to such boundary so established, then as to him that would

be the true boundary according to which his rights must be determined. If the grantor failed to designate this boundary, and the grantee at his own election entered upon the premises and took actual possession to a definite line, and this possession was acquiesced in by the grantor, then as to the grantor the boundary would be well established. If these conflicting claims of possession and boundary be not traceable to a common grantor, then it would be proper to inquire as to whether or not these coterminous proprietors agreed upon and established as between themselves a boundary between their respective tracts; and if so, the location of such boundary. These are necessarily questions of fact for a jury. As was well said by Chief Justice JACKSON in the case of *Shiels* v. *Lamar*, 58 *Ga.* 594, "these questions of evidence as to where old lines ran and old fences stood years ago, are peculiarly for the jury." They should be submitted as questions of fact, incumbered as little as possible with intricate complications arising from the application to them of principles of law which could have but slight bearing, if any, upon the real issues of fact involved.

8. We cannot say how far the judgment of the jury may have been influenced to the finding complained of in this case, by the error of the court in allowing them to treat the verdict admitted in evidence as establishing a boundary between the parties then at issue; but the charge of the court upon the subject of prescription, which excluded altogether from the consideration of the jury the defendant's claim of prescription under color of title, because her deed was not recorded, was necessarily harmful to her contention. The evidence is closely conflicting upon the questions of fact involved in the case; the parties and witnesses seem to be at issue upon all of them; and we think a retrial of the case is necessary to a proper settlement of this controversy.

Let the judgment of the court below be    *Reversed.*