## ELROD *v.* OWENSBORO WAGON COMPANY.

1. Where a purchaser at a tax sale bids in property and pays the purchase-price, no reason to the contrary appearing, he is entitled to have a deed made to him; but during the time allowed for redemption his title is inchoate and he has not the right to be put in possession of the property.
2. The act of 1898 (Acts 1898, p. 85) provides that, upon redemption, the purchaser shall make a quitclaim deed. It is no defense to a demand for such deed to answer that the purchaser has not yet had the selling officer to make a deed to him.
3. Where, under the act of 1898, the holder of a mortgage on land sold at a tax sale redeemed it and demanded that a quitclaim deed be made by the purchaser, and, on refusal by the latter to make it after receiving the redemption money, an equitable petition was filed to compel a compliance with the law, it furnished no defense to merely set up that the purchaser at the tax sale had formerly owned the land, and that he had been defrauded out of it by the defendant in the tax fi. fa. or her husband, under whom she held, neither of them being parties and there being no proceeding to set aside the sale for fraud.
4. The law allowing redemption of property sold at a tax sale contemplates a restoration of the title to the owner as it was before the sale, not that such person shall acquire a better title by the redemption than he formerly had, or that if the purchaser at the tax sale had an independent title, the redemption shall divest him of it and vest it in the defendant in the tax execution.

*Argued April 19,—Decided May 16, 1907.*

Equitable petition. Before Judge Fite. Murray superior court. February 20, 1906.

The Owensboro Wagon Company filed its equitable petition against Elrod, alleging as follows: Plaintiff is a corporation of Kentucky. It was the holder and owner of a mortgage executed to it by Maggie Browning and W. M. Davenport on certain described land. Plaintiff foreclosed this mortgage, obtaining a rule absolute at the February term, 1905, of the superior court. Shortly before the judgment was taken, the land was put up and sold as the property of Maggie Browning, under a tax fi. fa., and was bought in by the defendant. This occurred in January, 1905. In March an agent for the plaintiff tendered to the defendant $10.17, that being the amount which the defendant stated that he had paid on account of the sale, including the purchase-price, taxes, and cost. He accepted the tender, took the money, and agreed to make a quitclaim deed to Maggie Browning, the defendant in the tax fi. fa. It was agreed by all parties that the signing and deliv-

ery of the deed should be postponed until the next day. The defendant then failed and refused to sign the quitclaim deed or to pay back the money which had been paid for the deed, stating that he intended to keep both the money and the land. One of the prayers was that he should be compelled to make and deliver a quitclaim deed.

The defendant demurred to the petition and answered it as follows: For want of sufficient information he can neither admit nor deny the allegations as to the incorporation of the plaintiff, but supposes they are true. He denies the paragraph of the petition alleging the ownership of the mortgage and its execution, "and further says that plaintiff had no mortgage; that it was neither properly signed, attested, or recorded as required by law, and that if it had been, neither the said Maggie Browning or the said W. M. Davenport had any legal right to said land or right to mortgage the same; neither did Thomas Browning, under whom Maggie held; that for aforesaid reasons said pretended mortgage is void; that defendant can not say whether plaintiff foreclosed said mortgage as required by law or not, it being none of defendant's business, but that he now asks the court that plaintiff show that he did." It is admitted that the land was levied on, advertised, and sold by the sheriff under a tax fi. fa. against Maggie Browning, and was bought by the defendant. He bought in good faith, having no knowledge of the plaintiff's pretended claim, and in order to protect himself. At the sale there was no intimation of any lien or claim other than that for taxes. He admitted that he was tendered the amount of money stated in the petition, and that the plaintiff demanded that he make a deed to Maggie Browning. He refused at first to take the money, but afterwards did so. Defendant had owned this land, and exchanged it for certain land in Franklin county, with Maggie Browning and her husband. They agreed, in case of loss by the defendant, to reconvey this land to him. They did not have good title to the Franklin county land, and the defendant lost it. Before he could file an equitable petition, Thomas Browning died and Maggie applied for a year's support, and then left the State. Defendant has no deed from the sheriff under the tax sale, nor has the year for redemption expired. The defendant received the money only after insistence and threats of a lawsuit. The plaintiff's attorney presented to him for signature a quitclaim deed made to

Maggie Browning, Davenport, and Black ·jointly. On his refusal to sign it the attorney erased the names of Davenport and Black with a pencil, and again demanded that the defendant should sign it. He said that he would have his own attorney prepare a deed and would sign it, or would give back the money which he had received. Both propositions were refused. After being annoyed, he did make a statement that "if they fooled with him" he would keep both the money and the land. He tenders the money into court, and prays that it be decided whether he is legally liable to the plaintiff in that amount, and, if so, that the plaintiff be compelled to receive it. The plaintiff demurred to the answer, and it was stricken. The court then entered a decree, declaring that certain admissions had been made in the answer, and decreeing that whatever title the defendant might have to or in the land "be and the same is hereby divested and put into the said Maggie Browning." The defendant excepted.

*T. S. Gourdine* and *R. J. McCamy*, for plaintiff in error.

*C. N. King* and *C. D. & F. K. McCutchen*, contra.

LUMPKIN, J. (After stating the facts.)

1-2. The defendant says that he denies the allegations in one paragraph of the petition, but immediately couples this in the same sentence with the statement that plaintiff had no mortgage, for that it was neither properly signed, attested, nor recorded as required by law. This does not deny the existence of the mortgage or that it was signed. It merely asserts that there was some want of conformity with the requirements of the law in regard to the signing, attesting, and recording. Whether the impropriety existed in the signing, the attestation, or the recording does not appear; nor wherein such signing, attesting, or recording varied from the pleader's views as to what the law required. It is not stated why the defendant could not say whether plaintiff foreclosed the mortgage as required by law or not. He does not say that he had no knowledge or information on the subject, but only that it was none of his business. Not interfering with the business of others may be a very excellent practice in the daily affairs of life, but its assertion in response to a direct allegation of a petition does not meet the requirements of good pleading. Looking at the entire answer, it is evident that in substance only three grounds are sought to be urged by way of defense: First, that although the defendant

had bought the property at the tax sale and paid the amount of his bid, no deed had been made to him by the sheriff. Second, that the mortgagor or her husband had defrauded him in an exchange of land, by which she became the owner of the land involved in the present controversy; but that no equitable proceeding had been taken to set aside the sale or to recover the property. Third, that although he had received the money tendered by the plaintiff in redemption, he was unwilling to make a quitclaim deed, and offered to return the money.

Where a purchaser at a tax sale has paid the amount of his bid, no reason to the contrary appearing, as between him and the sheriff or selling officer he becomes entitled to a deed. He has not the right to be placed in possession of the property until the year allowed for redemption has elapsed. But the execution of the tax deed is not necessarily postponed until that time. Formerly no reconveyance or quitclaim deed was provided for upon redemption. In 1898 an act was passed providing for redemption not only by the owner, but also by the holder of any mortgage, judgment, lien, or other interest in the property, or by any creditor of the defendant in fi. fa. It was also declared that, where the property should be redeemed, the purchaser at the tax sale should make a quitclaim deed to the defendant in fi. fa., containing certain recitals as to the person making the redemption and the claim of right or interest under which it was made. If the defendant could defeat the plaintiff's demand that such a quitclaim deed be made by merely delaying calling upon the sheriff for the tax deed, it is evident that this provision of law might be made of no avail at the mere option of the purchaser. The person redeeming has the right to have the statute pursued. See, on this subject, *Bennett* v. *Southern Pine Co.*, 123 *Ga.* 618; Acts 1898, p. 85.

3. The defendant in the present proceeding purchased the land at the tax sale under a fi. fa. against Maggie Browning. He does not deny that she had the title, but seeks to set up fraud alleged to have been committed in obtaining it. She is not a party and no effort is made to set aside the transaction with her or to recover the land. It furnishes no reason for refusing to comply with the law in regard to the redemption, by a lienholder or creditor, of property purchased at a tax sale, to merely allege that the person as whose property it was sold had procured it by fraud.

4. The defendant had bought the land at tax sale, had received the money which he admitted was the proper amount for redemption, had promised to make a quitclaim deed to Maggie Browning, and had then refused to do so. We perceive no reason why a court exercising equitable powers can not by decree restore the property to the situation in which it was before the tax sale. The decree, however, is somewhat too broad in its terms. It may perhaps make no difference in the present case, but as a precedent the terms of the decree are too extensive. The object of the statute was to allow the owner of property sold at a tax sale to redeem it, or to allow any lienholder or creditor to do so for the purpose of subjecting it. The redemption contemplated by the law was a restoration to the status existing before the sale, except as to the added rights of the creditor or lienholder making such redemption, stated in the statute. It was never intended that one making a redemption should acquire greater title for himself or his debtor than such person previously had. Counsel for defendant in error contends that Elrod, the purchaser at the tax sale, was estopped from denying that Maggie Browning had a perfect title; that he was bound to make a quitclaim deed to her on redemption; and that this quitclaim would convey to her not only the title which she had before, but any other title or right which he might have had. This would be pressing the law of estoppel quite far. One who bids at a sheriff's sale without giving notice of the existence of any other claim may be estopped as against another bidder who purchases at the sale. But here the defendant, Elrod, was the purchaser. It often happens that persons who hold deeds to secure debts, or interests in land, are compelled, in order to protect their own interests, to pay the taxes of the person in possession, or buy the property at tax sale. If, under the act of 1898, such a person is compelled to allow the redemption for the small amount of taxes, costs, and premiums, and to make a quitclaim deed which will convey not only what he bought but any other title or claim which he might have, purchasing at a tax sale to protect one's own interest would be a disastrous proceeding. The statutory redemption contemplates restoration, not confiscation. *Ivey* v. *Griffin,* 94 *Ga.* 689. Cooley on Taxation, 543; Black on Tax Titles, §§348, 377. In *Morrison* v. *Whiteside,* 116 *Ga.* 459, an after-acquired title was set up,

but it was not held that under the act of 1898 the quitclaim required would convey more than the title acquired at the sale.

There was no error in striking the answer of the defendant. Nor was the decree entered erroneous, except that it should have directed that whatever title the defendant might have acquired under the tax sale to or in the land should be divested from him and vested in Maggie Browning. It was suggested in the brief of counsel for plaintiff in error that the court acted without evidence. There was no issue of fact requiring a submission of the case to the jury. The answer, with the admissions contained in it, had been placed before the presiding judge and discussed on the motion to strike it, and the recitals of the decree entered showed that the judge treated such admissions as before him for consideration. No specific assignment of error was made as to this. From what has been said it follows that there was no error in overruling the demurrer to the petition.

*Judgment affirmed, with direction. All the Justices concur.*