## PIERCE *v.* DENNETT *et al.*

1. The plaintiff offered in evidence in support of her petition, in the form of affidavits, the following: "Deponent says further that it was the general scheme of the original owners and purchasers of said subdivision, when the same was opened up originally, to restrict the use of each lot to a building line of thirty feet from the street and ten feet

---

Adverse Possession, 2 C. J. p. 193, n. 3.

Covenants, 15 C. J. p. 1311, n. 95; p. 1312, n. 3.

Deeds, 18 C. J. p. 397, n. 53, 59 New.

Evidence, 22 C. J. p. 164, n. 75; p. 485, n. 82; p. 498, n. 84 New; p. 912, n. 23; p. 929, n. 75; p. 930, n. 83; p. 988, n. 27; p. 994, n. 4.

Vendor and Purchaser, 39 Cyc. p. 1231, n. 88, 89, 93; p. 1651, n. 26.

from the line of adjacent owners; that these restrictions were placed in each and all bonds for titles and deeds made; that all of the buildings erected in said subdivision were built in conformity to these restrictions and building lines; deponents say further that said general scheme has never been abandoned." The court refused to admit this testimony, and error is assigned on this ruling on the ground that the testimony was pertinent and material to the issues involved. The court below properly ruled out the evidence complained of. The statement of a general scheme was a mere conclusion of the witnesses; and the statements made as to what appeared in the deeds and bonds for titles were inadmissible, those instruments being the highest and best evidence.

2. It was not error for the court to refuse to admit for his consideration the following testimony offered by the plaintiff: "that the owners of said property take pride in the fact that they have open space in front of their buildings and on the sides, which makes the general appearance attractive and inviting, makes the fire-insurance risk less hazardous and the rate of fire insurance less." This evidence was not admissible, as it was not material to the issues involved.

3. On the trial the court rejected the following testimony offered by the plaintiff: "Deponents say further that if the defendants are permitted to build said house, as they are now engaged in doing, on lot 24 in block 6 in said subdivision, within five or six feet of the lines of the lands of the plaintiff, that the same will result in irreparable damages to the plaintiff, and to all other property owners in said subdivision." This evidence was properly rejected, as it was a mere conclusion of the witnesses.

4. The court refused to admit, as testimony to be considered by him, the following testimony by the plaintiff: "I paid more for my lot with a building line of ten feet than I would had the building line of adjacent property been five feet." This evidence was not material to the issues involved in the case, and it was not error to exclude it.

5. The defendant tendered in evidence a blue-print map purporting to be a map of Peachtree Hills Place subdivision, which included lots 24 and 25 in block 6 of the subdivision, and showing a building line of thirty feet from the street and none on the sides. This map was objected to by the plaintiff, upon the ground that its execution and authenticity had not been proved. No proof being offered that the blue print was authentic, or that the lots had been sold with reference to this plat, its admission as evidence without such proof was error. *Odum* v. *McArthur,* 160 *Ga.* 281 (2) (127 S. E. 838), and cit.

6. A recorded bond for title is notice to the world of the right and interest of the obligee in the land described therein, and of the right and interest of subsequent transferees thereof in such land; and it is notice to a purchaser from the last transferee thereof, of any building restrictions therein contained. Generally a bond for title is merged in a subsequent deed made to the purchaser of land sold by the obligor; but such deed would not have the effect of abrogating "a general building scheme" under which lots of land in a subdivision were sold.

7. Applying the foregoing rulings to the facts of this case, the court below erred in not granting an injunction.

No. 5395. JANUARY 12, 1927.

Petition for injunction. Before Judge Humphries. Fulton superior court. March 30, 1926.

Mrs. Mary M. Pierce brought a petition against Mrs. Minnie Mae Jackson and Mrs. N. W. Dennett, praying for injunction, etc., and alleged the following: Plaintiff is the lawful owner of lot No. 26 in block 6 of the Peachtree Hills Place, in Fulton County, Georgia, and is in the actual possession thereof, having built a house thereon in which she now lives. She claims title to the house and lot under à warranty deed executed by the Peachtree Hills Realty Co. Inc., dated May 30, 1922, and recorded in the clerk's office of the superior court of Fulton County. Mrs. Minnie Mae Jackson is the apparent owner of the legal title to lot No. 24 in block 6 of the subdivision of Peachtree Hills Place, claiming title thereto under the same grantor. Both of said lots are portions of a subdivision in which, and in the sale of the lots, it was the scheme and purpose of the sellers, purchasers, and the community to create and establish an exclusive, high-class residential community with building lines of thirty feet from the street and ten feet from the lines of adjacent-land owners; and stipulations to this effect are contained in the deed of conveyance to plaintiff. Plaintiff purchased her lot and built her home thereon upon the representations of the sellers that these building lines would be strictly adhered to in all future sales and conveyances. On October 27, 1921, the Peachtree Hills Realty Co. Inc. executed a bond for title to George R. Leukhardt covering lot 24 in block 6 of said subdivision of Peachtree Hills Place, in which bond was a stipulation that the building line was to be ten feet from the lines of adjacent-land owners; the bond for title being recorded in the clerk's office of the superior court of Fulton County. On July 22, 1922, George R. Leukhardt transferred and assigned his right, title, and interest in the bond for title to Mrs. George R. Leukhardt; later, the exact date not appearing, Mrs. Leukhardt transferred her right, title, and interest in this bond and in the property therein described, to Mrs. N. W. Dennett; all of which appears of record in the office of the clerk of the superior court of Fulton County, Georgia. The bond for title above referred to contained, among others, a stipulation that "the above property is sold for residential purposes only, unless otherwise specified, and all such buildings shall conform to the thirty-foot building line on the plat, and shall

be at least ten feet from the side line of any lot owned by others." The restriction thus contained in the bond for title was a part of the original contract of purchase, and goes with the land; the defendants and each of them took title to the land with legal notice of such restriction as to the use of the land, and are bound thereby, regardless of any future contract or agreement they may make among themselves. Mrs. Minnie Mae Jackson is insolvent. While George R. Leukhardt held the land he built a dwelling-house thereon, adhered to the building line restriction, and built the house ten feet or more from the land of plaintiff; this house remained in such location until about six months ago, when it was destroyed by fire. On February 15, 1923, the Peachtree Hills Realty Co. Inc. executed to Mrs. N. W. Dennett, a warranty deed in which it conveyed to her lot 24 in block 6, but, instead of stipulating a building line of ten feet as contained in the bond, made a building line of five feet in the deed. On February 26, 1926, Mrs. N. W. Dennett conveyed the lot to Mrs. Minnie Mae Jackson, in which the building line was stipulated as five feet. Plaintiff is advised and believes that the sale from Mrs. Dennett to Mrs. Jackson was not bona fide, but was made upon some condition unknown to plaintiff, by which Mrs. Dennett still retains possession of the property and exercises rights of ownership. Mrs. Jackson or Mrs. Dennett, or both, by themselves, their agents, servants, and employees, are now undertaking to rebuild the dwelling-house recently destroyed by fire on lot 24 in block 6, and in doing so are building the same within five feet of the land of plaintiff, although she forbade them from so doing; and unless they are restrained and enjoined they will complete the building of the house within five feet of the land of plaintiff, notwithstanding the facts that the house so destroyed was built ten feet from the land of plaintiff, and that it is the general scheme of said subdivision to build no houses closer than ten feet to the lands of the adjoining-land owners. If the defendants are permitted to build the house within five feet of the land of plaintiff, as they intend, this would upset the general scheme of building lines in the subdivision and would result in irreparable damages to the property of plaintiff and other people in the subdivision; it would increase the fire risk and the rate of fire insurance, destroy the uniform building line established, the general approach to her home and

property, making the same look crowded, cramped, cheap, undesirable, and uninviting, all of which would result in irreparable damages to the plaintiff. At the time she purchased the lot and built her house, it was the general understanding that no houses were to be built in said subdivision closer than ten feet to the lands of the adjoining-land owners; and at the time the defendants and their predecessors in title held lot 24 in block 6, their conveyances of title contained restrictions that they were not allowed to build any house closer than ten feet to the lands of plaintiff; and by reason of this fact, the same being known to her, she purchased the lot and built the house and obtained thereby the vested right in lot 24 in block 6 that no house would be built thereon any closer approximately than ten feet to her land; and now the defendants, or either of them, have no right in equity and good conscience to build a house within a distance of five feet to her property, and thereby injure and damage the same. Plaintiff is remediless at law to obtain complete redress to right a wrong thus being perpetrated on her; and she therefore invokes the aid of a court of equity in her behalf, and prays that the defendants and each of them, their agents, servants, and employees, be immediately restrained and enjoined from building, erecting, or maintaining any house of any kind or description on lot 24 in block 6 closer than ten feet of the lands of plaintiff, etc.

The defendants filed an answer admitting and denying certain allegations in plaintiff's petition, and averring specifically that Mrs. Minnie Mae Jackson is the owner of the legal title to lot 24 in block 6 of the Peachtree Hills subdivision, subject to a mortgage or deed to secure a balance of the purchase-money. It is true that she bought from Peachtree Hills Realty Co. Inc. the property described, and that there is a provision in the deed that the line of each building is to be five feet from the adjoining property. She denies that she holds any title to any property with any restriction that places the line of any building she may construct on the lot a greater distance from the adjoining lots than five feet, and she denies all of the allegations suggesting any other further distance. Any bond for title that may have been issued to Leukhardt, or any one else, agreeing to convey the lot, has been surrendered and canceled. Any house that may have been built on the lot was a very small three-room building, while the

house Mrs. Jackson is now building on the lot is a much larger and more expensive building. The deed to Mrs. Jackson was a bona fide sale of the property described, upon which the building complained of is being erected. Mrs. Dennett has nothing to do with any building that is being erected on the lot, and she denies that there was ever at any time any general scheme in operation on said subdivision that houses on lots should be ten feet or more from the adjoining lots of other owners; no such scheme as that was ever known to her, nor does she believe any such scheme as that was ever in contemplation; there is no general scheme in operation there, and no damages will result to the plaintiff from the building of the house complained of; there will be no increase of the fire risk by building said house; there will be no destruction of any uniform building lines; and no uniform building line has been established.

On the hearing the prayer for injunction was denied. To this judgment, and to the rejection and admission of certain evidence, the plaintiff excepted.

*Levi O'Steen,* for plaintiff. *Chambers & Dickey,* for defendants.

HILL, J. (After stating the foregoing facts.) The record in this case discloses that Peachtree Hills Realty Company Inc. executed to George R. Leukhardt a bond for title to lot 24 in block 6 of Peachtree Hills Place (the lot in controversy), the bond containing, among others, the covenant that "the above property is sold for residence purposes only, unless otherwise specified; and all such buildings shall conform to the thirty-foot building line on the plat, and shall be at least ten feet from the side line of any lot owned by others." This bond for title was properly witnessed and recorded. It thus appears that the Peachtree Hills Realty Company Inc., which purchased the property formerly owned by the American Securities Company, adopted the general building scheme of the original owners of the Peachtree Hills subdivision, viz., the American Securities Company of Georgia, and incorporated in their bond for title the same building restrictions as set out in the bond for titles from Peachtree Hills Realty Company Inc. to George R. Leukhardt. This bond for title was transferred to Mrs. George R. Leukhardt, and by Mrs. Leukhardt to Mrs. N. W. Dennett, and recorded March 1, 1923. Mrs. N. W. Dennett executed a warranty deed to Mrs. Minnie Mae Jackson, dated

February 26, 1926, to the lot in question. The deed contained the following: "The above property is subject to the following covenants, limitations, and conditions: . . The above property is sold for residence purposes only, unless otherwise specified, and all such buildings shall conform to the thirty-foot building line on the plat, and shall be at least five feet from the side line of any lot owned by others." This deed was properly witnessed, and was recorded on March 2, 1926. One of the questions for decision is whether Mrs. Jackson, the last grantee of lot No. 24, is chargeable with notice of the restrictions in the bond for title, as set out above, of her predecessors in title. On the following authorities we are of the opinion that Mrs. Dennett took whatever interest she had in the lot in controversy with constructive notice of the restrictive use to which the lot could be put, and that the recorded bond for title was a part of the muniment of title of Mrs. Minnie Mae Jackson, and she was chargeable with notice of the restrictions in the bond for titles.

A bond for title is a muniment of title. "Bond for titles, with all the purchase-money paid, is a complete title to land; and the vendor has no property in that land, remaining in him, whereon to grant administration after his death." *Adams* v. *Brooks,* 35 *Ga.* 63-4. A bond for title is admissible in evidence as color of title, and may be the basis of a prescription against any person other than the obligor in the bond. *Burdell* v. *Blain,* 66 *Ga.* 169; *Garrett* v. *Adrain,* 44 *Ga.* 274; *Carstarphen* v. *Holl,* 96 *Ga.* 703 (23 S. E. 904). A purchaser of land, under a bond for title, who subsequently pays the purchase-money and takes a deed, may, in a suit for breach of warranty in the deed, put in evidence the bond for title, as a part of the history of the transaction, and to show that the defendants were bound to make him a good warranty title. *Clark* v. *Whitehead,* 47 *Ga.* 516 (3). A recorded bond for title is notice to the world of the right and interest of the obligee to the land described therein, and of the right and interest of subsequent transferees thereof in such land. Ga. Laws 1921, p. 157. Such bond for title, being duly recorded, is notice to a purchaser from the last transferee thereof of its terms and conditions, and of any building restrictions therein contained. While generally a bond for title is merged in a subsequent deed made to the purchaser of the premises by the obligor, such deed would not have

the effect of abrogating "a general building scheme" under which lots in a subdivision were sold. It follows that the trial judge erred in not granting an injunction. See *Hancock* v. *Gumm,* 151 *Ga.* 667 (3) (107 S. E. 872, 16 A. L. R. 1003).

Other headnotes do not require elaboration.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Gilbert, J., who dissent.*