*D. C. Jones* and *J. J. E. Anderson & Son,* contra.

CAFFEY *v.* PARRIS *et al.*

No. 12164. JUNE 18, 1938.

*B. H. Burgess,* for plaintiff.

*Scott Candler, J. A. McCurdy Jr., Madison Richardson,* and *Hope D. Stark,* for defendants.

BELL, Justice. Mrs. Reyna B. Caffey filed a petition against Robert W. Parris and others, seeking to enjoin the building of a dwelling-house on a described lot in Clairemont Park, a subdivision in the City of Decatur, DeKalb County, which lot, it was alleged, was restricted to use as a park. The judge refused an injunction, and the plaintiff excepted. The following facts appeared from the evidence introduced at the interlocutory hearing: In 1913 a tract of land on the north side of Decatur was subdivided for the purpose of sale as residence lots. A plat of the subdivision, called Clairemont Park Subdivision, was made and recorded in that year. It showed the numbers and dimensions of the various residence lots and the names of the streets. By this map an area near the middle of the subdivision was designated as "Closeburn Park," and was not divided into numbered lots as was the rest of the subdivision. The map represented the park as being a wooded section surrounding a body of water named "Lake Seneca." Clairemont Park Subdivision was outside of the city limits of Decatur until 1920, when it became a part of that city by an amendment to the Decatur charter. Soon thereafter the promoters of the subdivision offered the land designated as "Closeburn Park" to the City of Decatur for use as a park, but the offer was declined. It does not appear that anything was ever done in the way of developing the property as a park. "Lake Seneca" has never become

a reality, although there was some evidence that the reason the lake had not been created was that the City of Decatur would not permit it. In 1922 Parris and several others purchased the unsold portions of the subdivision, and formed the Clairemont Park Company for the purpose of selling the property. In 1926, after a majority of the lots had been sold, the lots still owned by this company were divided among the persons who were interested therein. In this transaction the "Closeburn Park" property was deeded to Parris and three other persons. Parris afterward obtained full title to this property, but the record does not disclose the exact date when he did so. In the division of the Clairemont Park Company property, Parris also obtained title to a number of the residence lots, including the lots which the plaintiff now owns. On December 1, 1930, in pursuance of a contract executed in 1928, Parris conveyed to Mrs. Reyna B. Caffey, the plaintiff, two lots immediately across a street from "Closeburn Park," by a warranty deed in which the lots were described as lots 12 and 13 of block 9 of Clairemont Park Subdivision. The deed contained the following provision: "This property is sold under the restrictions as enumerated in other lots in Clairemont Park Subdivision."

The City of Decatur, about the year 1928, paved the street, or streets, adjoining "Closeburn Park," and issued paving assessments against the property thus described, for a part of the cost. Some of the paving assessments being in default, the land was levied on by the city marshal and sold in 1932 to Sam E. Finley. The marshal executed to Finley two deeds, one for each levy, on June 7, 1932. After the redemption period had expired, on July 15, 1937, Finley reconveyed the property to Parris by a quitclaim deed reciting a consideration of "other consideration and ten dollars," and that "the purpose of this deed is to pay in full all the balance of paving the above streets covered by marshal's deeds recorded in Deed Book 363, pages 580, 581, 582, 583, 584, 585 and 586 of DeKalb County records, and to reconvey all claims held under above deeds." Soon after the reconveyance, Parris had the Closeburn Park tract subdivided into residence lots and a plat thereof made. On July 20, 1937, J. W. Dickson, one of the defendants, obtained a permit from the City of Decatur for building a dwelling-house on one of the lots contained in the "park" area.

In pursuance of this permit the defendants began construction of the dwelling-house in question. On August 16, 1937, Mrs. Caffey instituted the present action to enjoin the defendants from building this house, and for other relief, contending that the land was restricted to use as a park. Parris testified at the interlocutory hearing: "Mr. Dickson is furnishing the money for the pay-roll, I own the property, and Mr. Duvall is building the house." The judge refused an injunction, and rendered an opinion in which he held that the restriction had been extinguished by the tax sale in 1932. Other facts essential to a clear understanding of the case will be stated in the opinion which follows.

■ Where an owner of land sells a part of it in lots for residential purposes, the sales being made with reference to a plat by which another part of the land is designated as a park, and where the purchasers in buying rely upon the plat, the seller is estopped from asserting a claim adverse to the right of the purchasers, or their assigns, to have the land so designated restricted to use as a park and to share the use of it as such. *East Atlanta Land Co.* v. *Mower*, 138 *Ga.* 380 (75 S. E. 418). When the development of the Clairemont Park Subdivision was begun in 1913, a plat of the subdivision was made and recorded. From the copy of this plat in the record it appears that the land was subdivided into streets, residence lots, and parks. One of the parks was called "Closeburn Park" and included the land in question. The parks were included, of course, for the purpose of making the residence lots more desirable to prospective purchasers and their sale more profitable to the seller. In 1928 Robert W. Parris had become the owner, or at least a co-owner, of a number of the unsold lots of the subdivision and also of the tract known as Closeburn Park, situated in the same subdivision. The exact date that Parris acquired full title to Closeburn Park, hereinafter referred to as the park, is not disclosed by the record; but it does appear that he and three others obtained a deed to the property in 1926, and that afterwards the other grantees conveyed to him their interests. During the year 1928 Parris sold or contracted to sell to the husband of the plaintiff two lots in the subdivision located immediately in front of the park. The sale was made with reference to the plat of the subdivision made in 1913; and it appeared from the evidence that Parris, in making the sale, represented to the

plaintiff's husband that the land in question, of which he was at the time the owner or co-owner, was reserved for use as a park. On December 1, 1930, Parris executed to the plaintiff his warranty deed to the two lots which the husband of the plaintiff had contracted to buy in 1928. These facts were sufficient, as between the parties, to estop the plaintiff from attempting to use the park for residence purposes. *Hamil* v. *Pone,* 160 *Ga.* 774 (129 S. E. 94) ; *Pierce* v. *Dennett,* 163 *Ga.* 471, 477 (136 S. E. 440) ; *Phillips* v. *Ingram,* 163 *Ga.* 580 (136 S. E. 785) ; *Campbell* v. *Empire Land Co.,* 163 *Ga.* 815 (137 S. E. 240) ; *Reeves* v. *Comfort,* 172 *Ga.* 331 (157 S. E. 629). The fact that the land designated as a park has never been developed as such, but has been allowed to grow up in weeds and underbrush, will not change the result, it appearing that it was undeveloped at the time Parris sold the lots to the plaintiff's husband and made the representation, upon which he relied, that the land *would be* used as a park.

▪ The main contention of the defendants is that the sale of the park under execution for delinquent paving assessments divested all right of the plaintiff to use the land as a park, and that Parris obtained an unrestricted fee-simple title to the property when he repurchased it from the person who bought at the execution sale. If that contention be correct, the judgment must of course be affirmed. Whether a sale of land under such an execution would extinguish a restriction as to use seems never to have been decided by this court; and in the view which we take of the instant case, we do not deem it necessary to rule upon the question at this time. See, in this connection, *Verdery* v. *Dotterer,* 69 *Ga.* 194 (2) ; *Gross* v. *Taylor,* 81 *Ga.* 86 (6 S. E. 179) ; *Clower* v. *Fleming,* 81 *Ga.* 247 (2), 252 (7 S. E. 278) ; *Roddenberry* v. *Simpson,* 171 *Ga.* 715 (156 S. E. 583, 75 A. L. R. 414) ; Tidewater Pipe Co. *v.* Bell, 280 Pa. 104 (124 Atl. 351, 40 A. L. R. 1516) ; Northwestern Improvement Co. *v.* Lowry, 104 Mont. 289 (66 Pac. (2d) 792, 110 A. L. R. 605). Whether a purchaser of land at a sale for delinquent assessments for street improvements would obtain a title free of all such restrictions, or covenants, the defendants in the instant case do not stand in the shoes of such a purchaser. On the contrary, the record shows as a matter of law that Parris did no more than redeem the land. While the land was assessed, levied on, and sold as the property of Parris and another person, the rec-

ord indicates that Parris alone was the owner of the land, subject to such restriction, at the time of the sale for street assessments in 1932. Be that as it may, he was a proper person to redeem, even if he was not more than a tenant in common. Code, § 92-8301. It has been held that this section "affords a positive right to redeem within the specified period," but that "it does not inhibit the purchaser from according redemption after the period has expired. The purchaser may as a matter of grace accord such privilege." *Union Central Life Ins. Co.* v. *Bank of Tignall,* 182 *Ga.* 233 (185 S. E. 188). The right of redemption appertains to a sale to collect paving assessments as much as to tax sales (*Hopkins* v. *Chatham-Phœnix Bank &c. Co.,* 174 *Ga.* 136, 162 S. E. 521), and the purchaser at such a sale "may as a matter of grace" allow redemption after the expiration of the statutory period. The quitclaim deed of July 15, 1937, from Sam E. Finley, who purchased at the marshal's sales in June, 1932, to Robert W. Parris, one of the defendants in fi. fa. and present owner of the land, recites that "the purpose of this deed is to pay in full all the balance of paving the above streets covered by marshal's deeds recorded in Deed Book 363, pages 580, 581, 582, 583, 584, 585, and 586 of DeKalb County records, and to reconvey all claims held under above deeds." The deed recited that it was made "in consideration of the sum of other consideration and ten dollars." This deed appears upon its face to be nothing more than a quitclaim executed in pursuance of a redemption made after the statutory period had expired; and under the record it should have been so construed. "When property has been redeemed, the effect thereof shall be to put the title conveyed by the tax sale back into the defendant in fi. fa., subject to all liens existing at the time of the tax sale." Code, § 92-8302; *Elrod* v. *Owensboro Wagon Co.,* 128 *Ga.* 361 (4) (57 S. E. 712). This rule is equally applicable where the property is *redeemed* after the statutory period has expired. *Union Central Life Ins. Co.* v. *Bank of Tignall,* supra; *Johnson* v. *King Lumber Co.,* 39 *Ga. App.* 280 (4) (147 S. E. 142). See Hadlock v. Benjamin Drainage District, 89 Utah, 94 (53 Pac. (2d) 1156, 106 A. L. R. 876).

Furthermore, the defendant Parris, having made the covenant that the property designated as a park would be used only for park purposes, is personally bound by this covenant, no matter in what

manner the property may have left and returned to his ownership, apart from transactions with the covenantee. Code, §§ 29-111, 38-114; *Bowlin* v. *Hemphill,* 180 *Ga.* 435 (179 S. E. 341); 15 C. J. 1218, § 14.

█ It is further contended that the plaintiff has been guilty of laches, and is thereby barred from relief in a court of equity. This contention is based upon the following facts: On June 10, 1930, Parris deeded to Mrs. Hadaway a part of the park property, and "about seven years ago" she built on the lot a house in which she has resided since that time. The lot sold to Mrs. Hadaway was on the side of the park opposite to that facing the lots belonging to the plaintiff. Parris testified that he had spent approximately $2500 to $3000 on the park property, but it does not appear when he spent this sum, or how. It is urged for the defendants that this sum was spent for taxes and assessments for street improvements; but it does not appear that any part of it was expended after the Hadaway house was built, except the amount which was paid to redeem the property. It is not argued that the plaintiff is guilty of laches, except in failing to complain in reference to the Hadaway house. Although the plaintiff would probably be barred by laches in a suit against Mrs. Hadaway, the facts of the instant case do not disclose any basis for such a bar in favor of the present defendants. *Harvey* v. *West,* 87 *Ga.* 553 (2) (13 S. E. 693); *Parker* v. *Crosby,* 150 *Ga.* 1 (102 S. E. 446); *Beasley Motor Co.* v. *Cowart,* 41 *Ga. App.* 684 (2) (154 S. E. 458). Parris testified that he thought the restriction to use as a park was divested by the refusal of the City of Decatur to accept the property, and that he was thereafter at liberty to subdivide it for sale as residence lots. It does not appear from the evidence that the defendants have relied to any extent upon acts or omissions of the plaintiff as showing an abandonment or waiver of her right to enforce the restriction as to this property. It follows from what has been said that the judge erred in denying an interlocutory injunction.     *Judgment reversed. All the Justices concur.*